**Bobby L. MONROE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 426, 1993.**

Supreme Court of Delaware.

Submitted: Dec. 12, 1994.
Decided: Jan. 25, 1995.

Joseph A. Gabay, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Dept. of Justice, Wilmington, for State.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

VEASEY, Chief Justice:

In this appeal we consider the contention of defendant below-appellant Bobby L. Monroe ("Monroe") that there was insufficient evidence to sustain his convictions for Burglary Third Degree[1] and Theft Felony.[2]

1. 11 *Del.C.* § 824.

2. 11 *Del.C.* § 841.

This case presents the questions of whether: (i) latent fingerprints of defendant on the outside door to a burglarized, commercial building is sufficient to convict in the absence of any other evidence in the State's case-in-chief; and (ii) the failure of defendant to move for judgment of acquittal at the conclusion of the State's case bars him from raising sufficiency of evidence claims on appeal. For the reasons set forth below, we hold that: (i) the Superior Court committed plain error in not entering *sua sponte* a judgment of acquittal based on insufficient evidence linking Monroe to the offenses; (ii) the trial court's error is reversible; and (iii) the Double Jeopardy Clauses of the United States Constitution[3] and the Delaware Constitution[4] require that we remand the case for an entry of a judgment of acquittal.

## I. FACTS

In the early morning hours of July 4, 1991, the American Appliance Center (the "appliance center"), located in Wilmington, Delaware, was burglarized. When the manager of the appliance center arrived at the crime scene, he observed that the lower half of the front plexiglass door was broken. Upon inspection, he found that seven camcorders and four video cassette recorders were missing.

When officers from the Wilmington Police Evidence Detection Unit arrived at the scene, they surmised that a steel pipe found nearby was used to break the plexiglass door, which they concluded was the point-of-entry ("POE"). Though the officers could not lift any fingerprints from the pipe due to its rough surface, they were able to remove several sets of latent prints from nearby pieces of shattered plexiglass. The police later matched some of these prints to Monroe. The other prints, both identifiable and unidentifiable, could not be matched. Based on the print match, the police obtained and executed a warrant to search Monroe's house. They did not, however, uncover any stolen goods or other incriminating evidence.

The police nonetheless procured an arrest warrant for Monroe. Upon his arrest, Monroe denied his involvement in the burglary and told the arresting officer that he was with his brother at the time of the burglary.

On August 5, 1991, Monroe was charged with Burglary Third Degree and Theft Felony. A jury trial commenced on January 7, 1992. The State presented testimony from several witnesses, including Officer John Ciritella ("Officer Ciritella"), who originally lifted the fingerprints from the plexiglass shards, and Officer Thomas Liszkiewicz ("Officer Liszkiewicz"), a fingerprint expert who examined the prints.

After the State rested, Monroe put on his defense. As part of his defense, Monroe presented an alibi. He offered the testimony of his former girlfriend, Latonya Roundtree, who testified that she went to a movie with Monroe and that they window-shopped at the appliance center on July 3, 1991. Though she stated initially that they saw the movie "Boys 'N the Hood" that night, when confronted on cross-examination with evidence indicating that the movie had yet to open in Delaware as of July 3, 1991, she conceded that she might have been mistaken about the date she saw the movie with Monroe.

On January 9, 1992, the jury returned a guilty verdict as to both counts. Monroe did not move to dismiss the indictment at the end of the State's case, or for a judgment of acquittal either before or after the verdict. On May 1, 1992, the Superior Court sentenced Monroe to three years of incarceration for Burglary Third Degree and two years of suspended incarceration for Theft Felony. Monroe did not file a timely appeal.

Subsequently, Monroe filed a successful motion for post-conviction relief from the time limit for filing a direct appeal, resulting, *inter alia*, in a renewal of that time period. On November 24, 1993, Monroe timely filed this direct appeal, contending that the State presented insufficient evidence at trial to sustain his convictions. In an Order dated September 20, 1994, this Court ordered supplemental briefing and scheduled the case for oral argument. The Court heard oral argument on December 6, 1994.

3. U.S. Const. amend. V.

4. Del. Const art. I, § 8.

## II. MONROE'S WAIVER IS EXCUSED

As an initial matter, the State argues that Monroe waived his insufficiency of evidence claims by failing to move timely for a judgment of acquittal in the Superior Court. Though we find that Monroe did waive his insufficiency claims, we hold that the waiver should be excused under the circumstances of this case.

■ A motion for judgment of acquittal must be presented either before a case is submitted to a jury or within seven days of the jury's discharge. Super.Ct.Crim.R. 29 ("Rule 29"). A claim of insufficiency of evidence is reviewable only if the defendant first presented it to the trial court, either in a motion for a directed verdict or a Rule 29 motion for judgment of acquittal. Absent any such motion, the claim is waived. *Gordon v. State*, Del.Supr., 604 A.2d 1367, 1368 (1992); *see* Supr.Ct.R. 8 ("Rule 8"). This Court may excuse a waiver, however, if it finds that the trial court committed plain error requiring review in the interests of justice. Supr.Ct.R. 8; *e.g., Davis v. State*, Del.Supr., No. 283, 1993, *slip op.* at 2–3, 1994 WL 10980, Moore, J. (Jan. 12, 1994) (ORDER).

In the instant case, Monroe did not move for a directed verdict or a judgment of acquittal. Rule 8, however, requires only that a "question[ ] [be] fairly presented to the trial court[.]" Supr.Ct.R. 8. Monroe presented the insufficiency claim to the trial court in his post-conviction motion under Superior Court Criminal Procedure Rule 61. In that motion, he sought relief from his counsel's failure to heed his request to file an appeal within the time-frame provided for in Supreme Court Rule 6(a)(ii) ("Rule 6(a)(ii)").[5] In granting relief from the dereliction of Monroe's trial counsel, the Superior Court renewed the time to file a direct appeal. Such renewal, however, placed Monroe in only as good a position as he would have been absent the trial counsel's dereliction with regard to the filing of the appeal. *See Dixon v. State*, Del.Supr., 581 A.2d 1115, 1117 (1990). Though the Superior Court granted Monroe a fresh opportunity to meet the requirements of Rule 6(a)(ii), which he did, the failure to move originally for a judgment of acquittal under the time-frame provided for in Rule 29 was not excused. Nonetheless, the Court finds that, in view of its holding *infra* that Monroe would have been entitled to an entry of a judgment of acquittal if that motion had been made at the conclusion of the State's case, the interests of justice require that we review Monroe's claims on a plain error scope of review. *See, e.g., Davis, slip op.* at 2–3.

## III. STANDARD OF REVIEW FOR INSUFFICIENCY OF EVIDENCE CLAIMS

■ The standard of review in assessing an insufficiency of evidence claim is "whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt." *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991); *accord Shipley v. State*, Del.Supr., 570 A.2d 1159, 1170 (1990); *Skinner v. State*, Del.Supr., 575 A.2d 1108, 1121 (1990). In making this determination, "[t]he fact that most of the State's evidence [is] circumstantial is irrelevant; 'the Court does not distinguish between direct and circumstantial evidence.'" *Robertson*, 596 A.2d at 1355 (quoting *Shipley*, 570 A.2d at 1170).

In the instant case, the State's evidence, though purely circumstantial, was sufficient to sustain the jury's finding that the appliance center was burglarized. The key issue, however, is whether the fingerprint evidence presented here was sufficient to establish, *prima facie* during the State's case, the identity of Monroe as the burglar. As to that issue, we agree with Monroe that no rational trier of fact could have concluded that he committed the charged offenses based on the evidence presented during the State's case.

## IV. INSUFFICIENCY OF EVIDENCE CLAIMS

Monroe argues that his convictions and sentence should be reversed because of an

---

5. That rule states in relevant part: "A notice of appeal shall be filed ... [w]ithin 30 days after a sentence is imposed in a direct appeal of a criminal conviction[.]" Supr.Ct.R. 6(a)(ii).

insufficiency of evidence as to each charged offense. The State responds that, although the evidence against Monroe is only circumstantial, it is sufficient to sustain the guilty verdicts.

■ Although we have not previously addressed the question before the Court in this case—whether fingerprint evidence under circumstances such as those presented here is sufficient to establish a perpetrator's identity—other jurisdictions have dealt with similar issues. A substantial number of jurisdictions appear to have adopted the following rule in one form or another: a conviction cannot be sustained solely on a defendant's fingerprints being found on an object at a crime scene unless the State demonstrates that the prints could have been impressed only at the time the crime was committed. *See, e.g., State v. Carter,* 118 Ariz. 562, 562, 578 P.2d 991, 992 (1978) (in banc); *State v. Payne,* 186 Conn. 179, 440 A.2d 280, 282 (1982); *In re J.C.M.,* D.C.App., 502 A.2d 472, 474–75 (1985); *J.C. v. State,* Fla.App., 377 So.2d 731, 732–33 (1980); *Tyler v. State,* 198 Ga.App. 685, 402 S.E.2d 780, 782 (1991); *People v. Rhodes,* 85 Ill.2d 241, 52 Ill.Dec. 603, 422 N.E.2d 605, 608 (1981), *limited on other grounds by People v. Pintos,* 133 Ill.2d 286, 139 Ill.Dec. 832, 549 N.E.2d 344, 346 (1989); *People v. Woods,* 225 Ill.App.3d 988, 167 Ill. Dec. 1094, 1097–98, 588 N.E.2d 1224, 1227–28, *appeal denied,* Ill.Supr., 146 Ill.2d 650, 176 Ill.Dec. 820, 602 N.E.2d 474 (1992); *State v. Pryor,* La.Supr., 306 So.2d 675, 677–78 (1975); *Colvin v. State,* Ct.App., 299 Md. 88, 472 A.2d 953, 964 (1984), *cert. denied,* —— U.S. ——, 114 S.Ct. 2725, 129 L.Ed.2d 849 (1994); *People v. Himmelein,* 177 Mich.App. 365, 442 N.W.2d 667, .672 (1989), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 985, 112 L.Ed.2d 1070 (1991); *State v. Deutschmann,* Mo. Supr., 392 S.W.2d 279, 282 (1965); *State v. Ouellette,* 125 N.H. 602, 484 A.2d 1148, 1150 (1984); *State v. Watson,* 224 N.J.Super. 354, 540 A.2d 875, 877, *cert. denied,* 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566 (1988); *State v. White,* 67 N.C.App. 348, 312 S.E.2d 712, 713–14 (1984); *Commonwealth v. Price,* 278 Pa.Super. 255, 420 A.2d 527, 529–30 (1980); *State v. Giordano,* R.I.Supr., 440 A.2d 742, 746–47 (1982); *State v. Kyger,* Tenn.Crim. App., 787 S.W.2d 13, 30 (1989); *Ricks v. Commonwealth,* 218 Va. 523, 237 S.E.2d 810, 812 (1977).[6]

■ Evidence may be sufficient to sustain a conviction, however, where the circumstances surrounding a defendant's fingerprints create a strong inference that the defendant was the perpetrator. These surrounding circumstances include, but are not limited to, the following: whether the prints were found in a private or public structure (*i.e.,* whether the object in question was generally-accessible); whether the defendant had any special access to the object in question which may provide an alternative explanation for the presence of the prints; and whether the manner of placement of the prints on the object is supportive of the defendant having placed them there while committing the charged offense.

■ Representative cases where convictions were not set aside on an insufficiency of evidence basis include: *Taylor v. Stainer,* 9th Cir., 31 F.3d 907, 908–09 (1994) (defendant's fingerprints found on inside of POE window sill of private home; no special access); *Carter,* 118 Ariz. at 563, 578 P.2d at 992 (prints on inside surface of POE window of private home; no special access); *State v. Crosby,* 196 Conn. 185, 491 A.2d 1092, 1094 (1985) (prints on glass door of wall unit inside store from which jewelry was stolen; door was cleaned with solution that removed all fingerprints from surface and store was inaccessible from time of cleaning until burglary); *State v. Thorpe,* 188 Conn. 645, 453 A.2d 88, 89–90 (1982) (prints on jewelry box located inside business premises from which jewelry was stolen; box was cleaned and not accessible to defendant before burglary); *Hawkins v. United States,* D.C.App., 329 A.2d 781, 782 (1974) (prints on dresser drawer inside bedroom of burglarized home; no special access); *Woods,* 167 Ill.Dec. at 1097–98, 588 N.E.2d at 1227–28 (prints on glass shard from broken POE window in private resi-

---

6. *See also* 29A Am Jur.2d *Evidence* § 1482, at 864–66 & nn. 27–29 (1994) (collecting cases); M.C. Drabsfield, Annotation, *Evidence—Finger-prints, Palm Prints, or Bare Footprints,* 28 A.L.R.2d 1115, 1155–57 (1953 & Supp.1981).

dence; no proof of special access); *Colvin*, 472 A.2d at 964–65 (prints on glass shards of POE, inaccessible basement door, broken to gain entry to burglarized private home; defendant found in possession of stolen items); *Deutschmann*, 392 S.W.2d at 282 (prints on coin box located behind counter of burglarized business; not generally-accessible); *Ouellette*, 484 A.2d at 1150 (prints on certain papers taken from dispenser located behind counter of burglarized store; no special access); *Giordano*, 440 A.2d at 746–47 (prints on air conditioner unit inside premises that was unsuccessful target of burglary; unit was thoroughly cleaned before burglary and there was no public access to premises between time of cleaning and burglary); *Ricks*, 237 S.E.2d at 812 (prints on jar inside bedroom of burglarized private home; no special access).[7]

Applying the above standards, the courts in each of the following cases reversed a defendant's conviction due to lack of sufficient evidence linking the defendant to the charged offenses. *Payne*, 440 A.2d at 282–83 (prints on outside of a driver side, front door window of generally-accessible car in which victim was robbed); *J.C.M.*, 502 A.2d at 473–75 (prints on can of air freshener, generally accessible before purchase by victim, and located near POE window of burglarized private home; stolen property not recovered); *Townsley v. United States*, D.C.App., 236 A.2d 63, 65 (1967) (prints on glass shard from smashed POE front door of burglarized business; glass piece located inside premises); *White*, 312 S.E.2d at 713–14 (defendant's fingerprints on window shattered while gaining entry to victim's private home; defendant claimed special access); *Commonwealth v. Cichy*, 227 Pa.Super. 480, 323 A.2d 817, 818

(1974) (prints on cigarette package's cellophane wrapper, found inside burglarized gas station which defendant had visited on at least one prior occasion). In such cases, a defendant has no obligation to offer a credible, lawful explanation for the existence of his or her fingerprints on the object in question. *E.g.*, *Payne*, 440 A.2d at 282 n. 3; *White*, 312 S.E.2d at 714. *But see Woods*, 167 Ill.Dec. at 1098, 588 N.E.2d at 1228 (rejecting defendant's unsupported theory on appeal that his prints could have been impressed at time other than during commission of burglary).

We find the treatment of this issue by other jurisdictions useful in analyzing the insufficiency of evidence claims presented here. In the instant case, the State presented the following fingerprint evidence in attempting to satisfy its burden of linking Monroe to the burglary:

(1) Officer Ciritella testified that, based on his past experience, fingerprints on a large piece of glass that was dangling at the POE indicates that the print's owner moved the glass piece aside to more easily enter the store. He admitted, however, that he was speculating as to what may have actually occurred.

(2) Upon being recalled to the stand, Officer Ciritella conceded that "[t]he only latent lift that I can determine that came from inside is [that from] the [dangling] pane of glass that I took out of the door," and that he could not identify those particular prints to be Monroe's. He stated that Officer Liszkiewicz was responsible for making the latter identification.

(3) Officer Liszkiewicz presented extensive testimony relating to the prints. Aggre-

7. *See also State v. Coriano*, 12 Conn.App. 196, 530 A.2d 197, 199 (prints on glass cabinet door inside premises, placed there at time glass was broken to gain access to cabinet), *cert. denied*, 205 Conn. 810, 532 A.2d 77 (1987); *In re M.M.J.*, D.C.App., 341 A.2d 421, 422 (1975) (prints on transom window frame located over an interior door of burglarized private home, not otherwise accessible to defendant; frame fell inward when window was broken to gain entry); *Tyler*, 402 S.E.2d at 782 (prints on object inside private home; no special access); *People v. White*, 241 Ill.App.3d 291, 181 Ill.Dec. 746, 751–52, 608 N.E.2d 1220, 1225–26 (1993) (prints on inside

surface of porch door of victim's private home; no special access); *State v. White*, La.App., 430 So.2d 171, 173 (prints on sill of inaccessible, POE back window of private home), *writ denied*, La.Supr., 433 So.2d 1055 (1983); *Watson*, 540 A.2d at 878 (prints on outside column, generally not accessible to public, of burglarized complex); *Price*, 420 A.2d at 529–30 (prints on television set located inside burglarized private residence; no special access); *Commonwealth v. Hunter*, 234 Pa.Super. 267, 338 A.2d 623, 624 (1975) (prints on sheet metal covering POE window located ten feet above ground level).

gately, he identified eight prints as Monroe's and seventeen prints which belonged to others. As to the latter, he did not know whether they belonged to more than one person, or the identity of their owner(s). He also found an additional fourteen prints which he classified as unidentifiable, that is, of insufficient quality to make a comparison.

(4) Officer Liszkiewicz continued that he had no knowledge regarding whether the fingerprints he matched to those of Monroe were removed from one or more pieces of glass, or whether they were removed from glass pieces that were inside or outside the store.

(5) Though he initially stated that he could not "form some rough hypotheses as to how [Monroe's] fingerprint was left behind," Officer Liszkiewicz later opined that, based on his "experience on the streets," "the known fingerprints of [Monroe] and the unknown fingerprints left behind by this other person or persons, and the smudges, [were] consistent with someone pulling shards of Plexiglass out of a door frame and moving them out of the way[.]" He conceded that the prints were also consistent with "somebody just touching the surface of the door[.]"

(6) Officer Liszkiewicz also conjectured that, based on his training and experience, an area on the door between the ground and the handle (which was the POE and from where the pieces of glass yielded the prints) is less likely to be touched in the normal use of a door than the area adjacent to the door handle.

The State's reliance on the above testimony of the two officers to satisfy its burden of making out a *prima facie* case is unpersuasive. Regarding the testimony relating to the prints on the inside of the dangling plexiglass shard, what is saliently absent from the testimony is any match-up of the prints on that shard and those of Monroe. That is, Officer Ciritella could testify only that he found **someone**'s prints on the inside shard and Officer Liszkiewicz could **not** match those prints on **that** piece of glass to Monroe's prints. Officer Liszkiewicz, in fact, did not know whether the fingerprints were all from one piece of shattered plexiglass or several, or whether any particular prints he tested were from shards found inside or outside the appliance center. Thus, even assuming that finding Monroe's prints on the inside surface of the glass piece dangling from the door is somehow more inculpatory than finding them on the outside,[8] the State failed to establish that the prints on the inside were indeed Monroe's.

The plexiglass pieces came from the front door of the appliance center, which was generally accessible to the public. *See Townsley,* 236 A.2d at 65. There was no evidence that Monroe's prints were placed on the glass at the time the door was shattered to gain entry. *See id.; Cichy,* 323 A.2d at 818; *White,* 312 S.E.2d at 713–14. Both Officers Ciritella and Liszkiewicz testified that they could not determine on which day or at what time any of the prints were left on the door.

---

**8.** The Court notes that this is not self-evident, given that both the inside and outside surfaces of the door were generally accessible to the public. *See Townsley,* 236 A.2d at 65. *But see White,* 608 N.E.2d at 1225–26 (focusing on prints being on inside surface of porch door; reasoning that, because door was to private home to which defendant had no special access, there was no innocent explanation for presence of prints). The only reason that inside prints would be more inculpatory here would be if the Court considered Monroe's failed alibi. As part of his alibi, Monroe claimed he had never been inside the store, in which case there would be no innocent explanation for the presence of the prints on the inside surface of the glass piece. Thus, even had the State established that Monroe's prints were on the inside surface of a generally-accessible, public door, because this evidence would not

have been sufficient for the State to have established identity as part of its case-in-chief, the apparent mendacity of Monroe's alibi is irrelevant to deciding whether the Superior Court erred in not *sua sponte* dismissing the indictment at the conclusion of the State's case. *See White,* 312 S.E.2d at 714; *Townsley,* 236 A.2d at 65. The Court finds unpersuasive the State's reliance on *Wright v. West,* —— U.S. ——, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), in arguing to the contrary. That case held that a jury is entitled to consider the implausibility of a defendant's alibi in determining guilt, *Wright,* —— U.S. at ——–——, 112 S.Ct. at 2492–93, whereas the specific issue here is whether the Superior Court erred *ex ante* in allowing the case to go to the jury where the State failed to produce sufficient, *prima facie* evidence establishing identity.

None of the items stolen were found in Monroe's possession upon execution of the search warrant. *See Colvin,* 472 A.2d at 964–65. The only explanation that Officer Liszkiewicz could attribute to the existence of the several sets of identifiable but unmatched, as well as the several unidentifiable, fingerprints on the glass pieces was that a door is a type of object that, in its natural use, tends to accumulate many fingerprints. That explanation is demonstratively indicative of the weakness in the State's case.[9]

Though the State no longer needs to disprove every possible innocent explanation in pure circumstantial evidence cases, *Williams v. State,* Del.Supr., 539 A.2d 164, 167, *cert. denied,* 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988), the range of abundant, innocent explanations for the presence of Monroe's prints on the plexiglass shards is too vast for "any rational trier of fact" to have found beyond a reasonable doubt an essential element of both charged offenses—namely, identity. *See Payne,* 440 A.2d at 282; *White,* 312 S.E.2d at 713–14; *Townsley,* 236 A.2d at 65; *Cichy,* 323 A.2d at 819.

The Court holds that the Superior Court committed plain error in not *sua sponte* granting a judgment of acquittal upon the State's completion of its case. Given the self-evident importance of establishing identity, this error, though perhaps understandable in view of Monroe's failure to raise the question, cannot be said to be harmless. Our holding is limited to the facts before us today. We express no opinion on the sufficiency of fingerprint evidence to establish guilt in cases involving different circumstances. We hold only that the evidence the State presented at trial in this case fell short of the reasonable doubt requirement.

## V. DISPOSITION OF THIS CASE

■ The final issue before the Court is the proper disposition of this case. Where an appellate court overturns a jury's guilty verdict on insufficiency of evidence grounds, the Double Jeopardy Clause of the United States Constitution bars retrial of the defendant. *Burks v. United States,* 437 U.S. 1, 11, 18, 98 S.Ct. 2141, 2147, 2150–51, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978) (applying *Burks* to state criminal prosecution). The *Burks* court reasoned: "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." 437 U.S. at 11, 98 S.Ct. at 2147. Any other regime of law would "afford the government an opportunity for the proverbial 'second bite at the apple.'" *Id.* at 17, 98 S.Ct. at 2150.[10] Thus, given our holding above that the State did not sufficiently establish identity in its case-in-chief, the federal Double Jeopardy Clause would bar retrial of Monroe for the conduct in question here. *See Greene,* 437 U.S. at 24, 98 S.Ct. at 2154.

The Double Jeopardy Clause of the Delaware Constitution also requires that Monroe be acquitted. "[T]he double jeopardy provisions in the United States Constitution and the Delaware Constitution are similar." *E.g., State v. Pusey,* Del.Supr., 600 A.2d 32, 36 n. 2 (1991).[11] Delaware has codified double jeopardy analysis in 11 *Del.C.* § 207(1) ("§ 207(1)"),[12] which reads in relevant part:

> When a prosecution is for a violation of the same statutory provisions and is based upon the same facts as a former prosecution, it is barred by the former prosecution [when] ... [t]he former prosecution resulted in an acquittal.... There is an acquittal if the prosecution resulted ... in a

9. As to the State's theory that the location of the POE prints was not indicative of them having been left there in the normal use of a door, presented via speculation by Officers Ciritella and Liszkiewicz, this represents, at best, a scintilla of inculpatory, circumstantial evidence. The Court finds that, as such, it is insufficient to sustain Monroe's convictions.

10. This bar from retrial is unaffected by a defendant's failure to move for a judgment of acquit-

tal. *See Burks,* 437 U.S. at 17–18, 98 S.Ct. at 2150–51.

11. In *Pusey,* the Court noted that it has never been required to determine if analysis is identical under the federal and State double jeopardy clauses. 600 A.2d at 36 n. 2. This case similarly does not require that we consider this issue.

12. *Pusey,* 600 A.2d at 34–35 (noting that § 207(1) codifies common law double jeopardy analysis).

determination by the court that there was insufficient evidence to warrant a conviction.

Once there is a finding of an "acquittal" under § 207(1), then Delaware's Double Jeopardy Clause bars retrial. *See Chao v. State*, Del.Supr., 604 A.2d 1351, 1360 (1992) (Delaware's Double Jeopardy Clause " 'protects against a second prosecution for the same offense after acquittal' ") (citation omitted); *accord State v. Cook*, Del.Supr., 600 A.2d 352, 354 (1991); *Pusey*, 600 A.2d at 35. Where the basis for acquittal is a lack of sufficient evidence, this Court must remand the case for an entry of a judgment of acquittal. *Weber v. State*, Del.Supr., 547 A.2d 948, 959–61 (1988) (finding meritorious an insufficiency of evidence claim; reversing denial of directed verdict motion and remanding for entry of a judgment of acquittal).

In the instant case, as earlier stated, the Superior Court erred in *sua sponte* failing to make at the end of the State's case "a determination ... that there was insufficient evidence to warrant a conviction." *See* 11 *Del.C.* § 207(1). Had the trial court made the requisite determination, then the "former prosecution [would have] resulted in an acquittal." *See id.* Upon being so acquitted, Monroe could not have been retried under Delaware's Double Jeopardy Clause. *See id.; Chao*, 604 A.2d at 1360; *Cook*, 600 A.2d at 354; *Pusey*, 600 A.2d at 35. Thus, because we reverse Monroe's convictions based on a lack of sufficient evidence, the federal and State Double Jeopardy Clauses require that we remand the case for an entry of a judgment of acquittal.

## VI. CONCLUSION

By failing to move for a directed verdict or a judgment of acquittal in the trial court, Monroe waived his right to raise an insufficiency claim on appeal. The Court finds, however, that the interests of justice mandate review. On the merits, because there was insufficient evidence linking Monroe to the charged offenses, the Superior Court committed plain error in failing *sua sponte* to enter a judgment of acquittal in favor of Monroe. We **REVERSE** the judgment of conviction and **REMAND** the case to the Superior Court for an **ENTRY OF A JUDGMENT OF ACQUITTAL** in favor of Monroe as to the Burglary Third Degree and Theft Felony counts.