Ann M. NORTH, Individually and as Administratrix of the Estate of William P. North, Sr., deceased; Patricia Piorko, Individually, and Frank Piorko, as Administrator of the Estate of Frank Piorko, deceased; Nancy B. Pusey, Individually and as Executrix of the Estate of Marquis Pusey, deceased; Plaintiffs Below, Appellants,

v.

OWENS–CORNING FIBERGLAS CORPORATION, Defendant Below, Appellee.

No. 309, 1996.

Supreme Court of Delaware.

Submitted: Sept. 30, 1997.

Decided: Oct. 30, 1997.

Rehearing Denied: Nov. 20, 1997.

Maria Rosoff Eskin (argued), Vincent J.X. Hedrick, II, and Thomas C. Crumplar, Jacobs & Crumplar, P.A., Wilmington, for Appellants.

Armand J. Della Porta, Jr. (argued), Kelley, Jasons, McGuire & Spinelli, Wilmington, and of counsel David L. Veator, Tucker & Goldstein, Boston, MA, for Appellee.

Before VEASEY, C.J., WALSH, and BERGER, JJ.

WALSH, Justice.

In this appeal from the Superior Court, the appellants, Nancy Pusey, Ann North and Frank Piorko (collectively, the "Plaintiffs"), individually and on behalf of the estates of Marquis Pusey, William North and Frank Piorko (collectively, the "Deceased"), seek reversal of a jury verdict rendered against them in favor of defendant-appellee, Owens–Corning Fiberglas Corporation ("OCF"), in the on-going asbestos litigation. On appeal, Plaintiffs claim that: (i) the trial court should have given jury instructions and propounded interrogatories on improper packaging and failure to substitute a safer product; (ii) the trial court erred by permitting OCF to present the affirmative defense of assumption of the risk without establishing a factual foundation linking the evidence supporting that defense with the Deceased; and (iii) the jury verdict as to plaintiff Pusey was against the weight of the evidence. We conclude that the trial erred by refusing to instruct the

jury and to propound jury interrogatories on Plaintiffs' alternative theories of negligence. Accordingly, the judgment of the Superior Court entered upon the jury verdict is reversed, and the case is remanded.

I

This case was initially tried before a jury in September 1993 and resulted in a verdict in favor of Plaintiffs. This Court reversed and remanded the case for error in the trial court's instructions to the jury concerning contributory negligence due to smoking. *In re Asbestos Litig.—Pusey Trial Group*, Del. Supr., 669 A.2d 108 (1995). A second trial was held in May through June 1996 and resulted in a jury verdict, through special interrogatories, in favor of OCF.

The Deceased worked at various industrial sites where they were exposed to Kaylo, an OCF product containing 15 percent asbestos. All three of the Deceased died of lung cancer. Plaintiffs brought suit against OCF, alleging in their complaints that OCF was negligent in failing to: (i) substitute a safer product for the asbestos in Kaylo; (ii) properly package Kaylo; and (iii) provide adequate warnings of the dangers of asbestos.

Three months before the start of the second trial, OCF's counsel sent a letter to Plaintiffs' counsel stating that OCF intended to raise the affirmative defenses of contributory negligence and assumption of the risk at trial as to all three of the Deceased. Further, the letter indicated that the defense of assumption of the risk would be based upon warnings in various industry publications, including *The Asbestos Worker's Journal*, a publication of the Asbestos Workers' Union.

The parties' March 20, 1996 Joint Pre-trial Submission stated,[1] *inter alia*, under the heading "Issues and Facts to be Proven by Plaintiffs":

2. Could an asbestos free product have been produced between 1950 and 1973?

3. Could the packaging of the defendant's product have been made to minimize or eliminate the escape of dust or

---

1. The Joint Pre–Trial Submissions listed contributory negligence due to smoking as OCF's only affirmative defense.

breakage of the asbestos products in the container?

8. Were the labels placed on the products of defendant insufficient?

Shortly before jury selection, the trial judge requested that Plaintiffs' counsel state the theory of their case, to assist the court in its introductory instruction to the jury. At that time, Plaintiffs' attorney responded that the theory was failure to warn.

At trial, Plaintiffs introduced evidence in support of all three theories of negligence. With respect to improper packaging, Plaintiffs introduced testimony of the Deceased's co-workers to the effect that dust accumulated in and around packages of Kaylo whenever boxes of Kaylo were carried, opened, or otherwise handled at job sites. This testimony established that the dust from the packages clung to workers' hands and clothing. In addition, Plaintiffs introduced internal OCF documents, dated from 1951 to 1958, demonstrating OCF's knowledge that dust arose from the handling and shipping of Kaylo. Plaintiffs also presented expert testimony that these dust levels were hazardous.

With respect to failure to substitute, Plaintiffs introduced numerous internal OCF documents concerning the possible substitution of asbestos in Kaylo. Among these were: (i) a 1953 patent for a substance that was eventually used in asbestos-free Kaylo; (ii) 1963 correspondence discussing an asbestos-free alternative; (iii) a 1967 OCF Weekly Report suggesting glass fibers as an alternative to asbestos in Kaylo; (iv) a 1967 OCF Monthly Report stating that research on a substitute had been stalled by heavy vacation schedules and at the request of the marketing department; and (v) a 1968 OCF Monthly Report stating that the search for a substitute is on hold for lack of manpower. In addition, Plaintiffs presented the expert testimony of a patent agent stating that OCF patented a substitute for asbestos in 1939.

In response, OCF introduced various internal documents, dated March 3, 1967 to Sep-

tember 19, 1972, that reveal attempts, and successive failures, to find a replacement for asbestos in Kaylo. These documents establish that OCF began work on a substitute in the early 1960s but that replacement did not become a priority until 1970. They also reveal that a replacement was found in the spring of 1972, at which time OCF began marketing asbestos-free Kaylo. Through cross-examination of Plaintiffs' patent agent, OCF offered evidence that a patented product is not necessarily a commercially viable one on a manufacturing scale.

At the prayer conference before closing arguments, Plaintiffs requested that the trial court instruct the jury that OCF had a duty to properly package Kaylo. The trial court denied this request, stating, "Duty to warn case, not improper packaging case. That's what you told me at the beginning." Plaintiffs next requested a jury instruction on OCF's duty to substitute a safer, alternative product. This request was also denied by the trial court, stating, "Same thing [as improper packaging]. Duty to warn, not duty to change product." Plaintiffs contend that the trial court's restrictive rulings were erroneous as a matter of law in view of the pretrial stipulation and the presentation of proofs on the three alternative theories of recovery.

## II

■ We review the decision of the Superior Court *de novo*. We recognize that, where evidence has been presented but carries little weight, the trial court has some discretion in determining which claims go to the jury. *McNally v. Eckman*, Del.Supr., 466 A.2d 363, 370 (1983) (citing *Coles v. Spence*, Del.Supr., 202 A.2d 569, 570 (1964)). That is not the situation we confront, however. Here, the trial court's ruling is not based on evidentiary weight but, rather, on a perceived lack of notice. There is no evidence in the record before this Court that OCF objected to the requested jury instructions on the grounds given by the Superior Court in its ruling.[2]

2. Although OCF contends that it made a record of its position objecting to Plaintiffs' requested instructions, it concedes that it is unable to supply a transcript reflecting this position. Because

OCF is obligated to establish a sufficient record to enable this Court to render a fair and accurate decision with respect to this issue under review, its contention lacks factual support. *Tricoche v.*

Nor did OCF object at trial when Plaintiffs presented evidence in support of all three theories of recovery.

■■■ A trial court may not, *sua sponte*, refuse to instruct the jury on claims that have been pleaded and upon which evidence has been presented. *See In re Asbestos Litig.—Pusey Trial Group*, 669 A.2d at 111–12. The trial court must "submit all the issues affirmatively to the jury" and must not ignore a requested jury instruction applicable to the facts and law of the case. *Alber v. Wise*, Del.Supr., 166 A.2d 141, 143 (1960). Thus, the Superior Court's conclusion that it could refuse to instruct the jury on Plaintiffs' alternative theories because they were not mentioned in the court's introductory instruction was a legal determination that is reviewable *de novo*. *See Hercules, Inc. v. Leu Trust and Banking (Bahamas) Ltd.*, Del.Supr., 611 A.2d 476, 481 (1992).

### III

Plaintiffs assert that the trial court erred because its refusal to submit the requested instruction was based on the court's belief that the position of counsel, communicated to the court for purposes of jury orientation, limited the issues in the case. Plaintiffs claim that they were not made aware that their case would be so limited until the prayer conference, because they listed the issues in the Joint Pre–Trial Submission and presented evidence at trial directed to all three theories of recovery. They further assert that they presented sufficient evidence to create an issue of material fact for resolution by the jury as to all three claims, thereby entitling them to the requested instructions and, presumably, a potential basis for a finding of liability.

OCF responds that Plaintiffs failed to present sufficient evidence to support the theories of improper packaging and substitution. *See Phillips v. Delaware Power & Light Co.*, Del.Supr., 216 A.2d 281, 284 (1966). Specifically, OCF argues that, at trial, there was no evidence concerning a design

defect in Kaylo's packaging. OCF maintains that Plaintiffs did not establish a *prima facie* case of design defect in the packaging or present any evidence that the Deceased actually breathed any dust coming from packages of Kaylo. OCF also contends that there was no evidence presented establishing that OCF knew the packaging was dangerous.

As to the failure to substitute claim, OCF contends that Plaintiffs have misunderstood such a claim, arguing that it is essentially part of a design defect claim. OCF further argues that Plaintiffs did not present evidence that a safer design was feasible but, instead, confused OCF's program to find an asbestos replacement with the existence of an asbestos-free product itself.

In any event, OCF argues any error resulting from the trial court's refusal to instruct was harmless because the jury found that OCF's negligence did not proximately cause the Deceased's lung cancers. OCF maintains that, even if the theories of improper packaging and failure to substitute had been presented to the jury, OCF would not have been found liable because such theories are subject to, and would have been negated by, the jury's findings on contributory negligence and assumption of the risk.

■■■ On this record, we are forced to conclude that the trial court's refusal to give jury instructions and to propound jury interrogatories was error where that refusal was based on the comment of Plaintiffs' counsel at beginning of trial. The trial court, and opposing counsel, were on notice of Plaintiffs' alternative theories of negligence because they were stated both in the complaint and in the parties' Joint Pre–Trial Submissions. That stipulation, which was never amended, controls the submission of proof at trial. Super.Ct.Civ.R. 16(e). We recognize that the comment of Plaintiffs' counsel might have misled the trial court in the crafting of its introductory instruction to the jury. But that mistake was not irreparable. The giving of an introductory jury instruction before any evidence is presented, while sometimes helpful, is neither an integral nor essential

*State*, Del.Supr., 525 A.2d 151, 154 (1987). The record supports the conclusion that the Superior

Court's ruling was made *sua sponte*.

part of the trial process. These introductory comments, analogous to the opening statements of counsel, are, by their nature, tentative and subject to the conformity with the evidence subsequently presented.

We find that Plaintiffs presented sufficient evidence at trial concerning alternative theories of negligence to entitle them to jury instructions. OCF's contention that the alternative theories of negligence could not have been submitted to the jury because they were not supported by evidence should have been the subject of a motion at trial and not left for argument on appeal. Supr.Ct.R. 8; *Monroe v. State*, Del.Supr., 652 A.2d 560, 563 (1995). Had OCF been of the view that the trial court's introductory remarks to the jury limited Plaintiffs' presentation of proof at trial, it should have moved to strike such evidence. Its failure to do so strongly suggests that it was not misled into believing that Plaintiffs had abandoned the alternative claims. We conclude that the Superior Court erred by refusing to instruct the jury and to propound jury interrogatories on Plaintiffs' alternative grounds of negligent failure to properly package Kaylo and negligent failure to substitute a safe alternative for asbestos.

We further find that the Superior Court's error was not harmless. Material issues of fact, which must be resolved by the jury, existed as to the extent of the risk assumed by the Deceased. Even if the Deceased are charged with the knowledge that working with asbestos may lead to lung cancer, the question remains whether they assumed the same risk by being exposed to asbestos in the dust emanating from Kaylo's allegedly defective packaging. Further, the affirmative defense of assumption of the risk does not apply to OCF's alleged failure to substitute a safer product. Had OCF substituted a safe alternative, there would have been no risk to assume. Moreover, assumption of the risk is an affirmative defense upon which the jury focuses only after a finding of liability on the part of the defendant. *Rochester v. Katalan*, Del.Supr., 320 A.2d 704, 707 (1974). Here the jury was not able to engage in its initial determination of liability on all theories of recovery because of the trial court's restrictive instructions. The preju-dice to the Plaintiffs in not receiving jury instructions and interrogatories on OCF's duties to properly package Kaylo and to substitute a safer alternative for asbestos is plain. The jury verdict, based on the trial court's restrictive ruling, must be reversed, and the matter remanded for a new trial.

## IV

In view of our reversal on the jury instruction claim, Plaintiffs' remaining two issues on appeal—(i) that the Superior Court erred by permitting OCF to present the affirmative defense of assumption of the risk, and (ii) that the jury verdict was against the weight of the evidence with respect to plaintiff Mr. Pusey—are deemed moot. For the guidance of the Superior Court in the event of a retrial, we note that all evidence concerning assumption of the risk may not be relevant to each of the Deceased and that a limiting instruction may be appropriate. As to the claim that OCF was permitted to present evidence on an affirmative defense that was not pleaded, we assume that the reassertion of that defense will come as no surprise to Plaintiffs.

The judgment of the Superior Court is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.