IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| QUENTIN CANNON, | § | |
| | § | No. 670, 2014 |
| Defendant Below- | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1310017689 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: October 7, 2015
Decided: October 20, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

### ORDER

On this 20th day of October 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Quentin Cannon ("Cannon") appeals from a Superior Court jury verdict finding him guilty of Attempted Robbery First Degree,[1] Burglary First Degree,[2] Assault Second Degree,[3] Conspiracy Second Degree,[4] and two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF").[5] He raises one claim. Cannon contends that the evidence presented at trial was insufficient to support a finding that he shared in his co-defendant's purpose

[1] 11 *Del. C.* § 531, 832.
[2] 11 *Del. C.* § 826.
[3] 11 *Del. C.* § 612.
[4] 11 *Del. C.* § 512.
[5] 11 *Del. C.* § 1447A.

to commit the Attempted Robbery First Degree and the Burglary First Degree with a deadly weapon. We find no merit to Cannon's appeal and affirm.

(2) On the evening of October 9, 2013, Cannon was at the home of his friend, Carlton Castillo ("Castillo"), located at 4 Booker Circle, New Castle, Delaware. Castillo's roommates, Japheth Crooks ("Crooks") and Ebony Barnard[6] ("Barnard") were also home at the time. While his roommates were sleeping, Castillo was in the basement playing video games. Cannon was in the basement as well but left the residence after telling Castillo he would return shortly.[7]

(3) Approximately ten to fifteen minutes after Cannon returned, Darrell Tyson ("Tyson") and Marvin Farlow ("Farlow") entered through the front door. Tyson immediately headed to the basement while Farlow kept watch at the front door. Once in the basement, Tyson pointed a gun at Castillo and told him to "give it up." A tussle ensued between Castillo and Tyson. Castillo was able to wrestle the gun from Tyson despite being hit in the head several times. Castillo, along with Crooks and Barnard, were able to subdue Tyson. Cannon fled the residence at some point during the altercation.[8] Tyson was ultimately taken into custody by New Castle County Police Corporal Tina Shughart.

---

[6] Barnard's children were also present in the home during the night in question.

[7] At trial, Castillo estimated that Cannon was away for twenty minutes to an hour.

[8] Castillo assumed Cannon left to pursue Farlow.

(4) Later in the night, New Castle County Police Corporal John Pullin pulled over a blue 1998 Mercury Marquis that was identified by Corporal Shughart as a vehicle that left the scene of the home invasion. Cannon was in the backseat. While searching Cannon, Corporal Pullin found a cell phone and approximately $2,520.00 in cash. During a search of the car, Corporal Pullin also found Tyson's cell phone, the driver's cell phone and $1,637 behind the back seat.

(5) Middletown Police Detective Timothy Hoffecker conducted an analysis of the cell phones recovered. He found text messages that indicated that Cannon was, in fact, orchestrating the robbery with Tyson. Specifically, Cannon conveyed information about money at the residence, who was in the residence, and where each resident was located within the residence. The text messages also revealed that Cannon was aware of Tyson's intention to use a gun. Further, Cannon instructed Tyson to "make them face the floor" when he entered the basement.

(6) At trial, Tyson testified that he informed Cannon that he was bringing "one strap."[9] Tyson also testified that during one of two phone conversations Cannon requested he not bring a gun.[10] Tyson further testified that Cannon left the residence as soon as Cannon saw the gun, which directly contradicted the testimony of the victim, Castillo. Cannon did not move for a judgment of acquittal during trial.

---

[9] "Strap" is slang for gun.

[10] Detective Hoffecker testified that Cannon and Tyson spoke on the phone twice.

3

(7) "A claim of insufficiency of evidence is reviewable only if the defendant first presented it to the trial court, either in a motion for a directed verdict or a Rule 29 motion for judgment of acquittal."[11]  This Court may determine any issue not presented below for plain error "when the interest of justice so require[s]."[12]  "[P]lain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[13]

(8) "The standard of review in assessing an insufficiency of evidence claim is 'whether *any* rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt.'"[14]  "[I]t is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts."[15]  "We will not substitute our judgment for the fact finder's assessment in these areas."[16]  "The fact that most of the State's evidence was circumstantial is irrelevant; the Court does not distinguish between direct and circumstantial evidence."[17]

---

[11] *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995).

[12] Supr. Ct. R. 8; *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

[13] *Turner v. State*, 5 A.3d 612, 615 (Del. 2010) (quoting *Wainwright*, 504 A.2d at 1100).

[14] *Monroe*, 652 A.2d at 563 (quoting *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991)).

[15] *Poon v. State*, 880 A.2d 236, 238 (Del. 2005).

[16] *Id.*

[17] *Robertson*, 596 A.2d 1345, 1355 (Del. 1991) (internal quotation marks omitted).

4

(9) "[W]hen considering the guilt of a defendant charged as an accomplice to an armed [crime] a jury must distinguish between whether the defendant shared his partner's purpose to commit the [crime] with a deadly weapon or shared only his purpose to commit the [crime]."[18]

(10) We find no merit to Cannon's claim. Cannon contends that the length of his incarceration warrants full appellate review despite his failure to move for judgment of acquittal at trial, but this contention is unavailing. Cannon could have moved for judgment of acquittal but failed to do so. Further, Cannon does not cite, or even allege, any defects in the proceedings below. Cannon's claim does not constitute plain error, and his claim is waived.

(11) Even assuming that Cannon's claim was not waived, the Record supports a jury finding that Cannon was guilty of the gun related offenses. First, the text messages between Tyson and Cannon indicate that Cannon was aware of Tyson's intent to bring a gun to the residence. Second, Castillo testified that Cannon was still present when Tyson pistol-whipped him. Third, it was the jury's prerogative to accept or reject Tyson's testimony regarding whether Cannon supported the use of a gun. Based on this evidence, a rational fact finder could have found that Cannon shared Tyson's purpose to use a weapon.

---

[18] *Allen v. State*, 970 A.2d 203, 213 (Del. 2009) (quoting another source); *see also* 11 *Del. C.* § 274.

5

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED**.

BY THE COURT:

_____
Justice