# IN THE SUPREME COURT OF THE STATE OF DELAWARE

MICHAEL KADE,

    Defendant Below-
    Appellant,

v.

STATE OF DELAWARE,

    Plaintiff Below-
    Appellee.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

No.   579, 2016

Court Below:   Family Court of
the State of Delaware

File No.: 1602012904 (N)

Submitted:  June 7, 2017
Decided:    July 5, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 5th day of July 2017, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)   Appellant, Michael Kade[1] appeals from a Family Court order finding him delinquent on one count of Carrying a Concealed Dangerous Instrument, specifically, a taser. He makes two arguments on appeal. First, he contends that there was insufficient evidence to justify findings that the taser was an electronic control device designed to incapacitate a person or a device readily capable of

---

[1] The Court assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

causing death or serious physical injury. Second, he contends that the trial court incorrectly interpreted the definition of a dangerous instrument to include all tasers regardless of the device's design or characteristics.

(2) On February 19, 2016, New Castle County Police officers responded to reports of a fight possibly involving a weapon at Glasgow Court Trailer Park. Upon arriving at the scene, Officer Richard Chambers spoke with Kade. As the officer was speaking with Kade, Kade reached for his pocket several times. Officer Chambers instructed Kade to stop reaching for his pocket, and asked him what he had in there. Kade told the officer that it was something he found on the ground. Officer Chambers observed a bulge in Kade's pocket, but could not identify the object, as it was completely concealed from view. Officer Chambers then conducted a pat down search of Kade's person. The object in Kade's pocket was square in shape, and Officer Chambers thought it might be a box containing a small gun. He removed the object from Kade's pocket and discovered that it was a purple taser. Kade testified at trial that he and a group of friends had gone to Glasgow Court Trailer Park to back up a friend, D.L., in anticipation of a pre-planned fight.

(3) Kade was charged with one count of Carrying a Concealed Dangerous Instrument ("CCDI") and one count of Offensive Touching. The State entered a *nolle prosequi* on the Offensive Touching charge prior to trial. The case was tried before a Family Court commissioner. At the conclusion of the State's evidence,

2

Kade moved for judgment of acquittal on the ground that the State had failed to introduce evidence concerning the taser's voltage or whether it was tested or not. The commissioner denied the motion and found Kade delinquent of CCDI on the ground that the taser was an electronic control device designed to incapacitate a person. Kade filed a request for review of the commissioner's order. In the request for review, Kade argued that the State failed to prove either that the device was readily capable of causing death or serious injury or that it was an electronic control device designed to incapacitate a person. After considering the matter *de novo*, a Family Court judge accepted the commissioner's conclusions and affirmed the commissioner's decision.[2] Although the Family Court judge's order discusses the capacity of the taser to cause serious physical injury, we read the orders of the commissioner and the judge as resting on conclusions that the taser was a dangerous instrument because it was an electronic control device designed to incapacitate a person.

(4) Kade first contends that the Family Court erred when it denied his motion for judgment of acquittal because the State did not present sufficient evidence to show, beyond a reasonable doubt, that the taser was a dangerous instrument as defined under 11 *Del. C.* § 222(4) and (10). "We [] review the denial of [a] motion

---

[2] Appellant's Opening Br., Ex. III.

3

for judgment of acquittal *de novo*, to determine whether a rational finder of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt."[3]

(5) Under 11 *Del. C.* § 222(4), a dangerous instrument is defined as:

> any instrument, article, or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury . . . *or* any electronic control devices including but not limited to a neuromuscular incapacitation device designed to incapacitate a person.[4]

An electronic control device is defined as "a device designed to incapacitate a person, including but not limited to a neuromuscular incapacitation device."[5] Kade argues that the State failed to present sufficient evidence that the taser found in his pocket was either: (1) readily capable of causing death or serious physical injury, or (2) an electronic control device designed to incapacitate a person. His argument can fairly be summarized as an argument that the evidence was insufficient because the State did not present evidence regarding the device's voltage or functioning, or evidence of any testing of the device, or the extent to which the particular device involved here was capable of causing harm, or whether it functioned at all. The device was not admitted into evidence. Because the Family Court rested its

---

[3] *Gibson v. State*, 981 A.2d 554, 557 (Del. 2009).
[4] (emphasis added).
[5] *Id.* § 222(10).

4

decision on a conclusion that the taser was an electronic control device designed to incapacitate a person, we need address only that aspect of the definition of a dangerous instrument.

(6) At trial, Officer Chambers described the object as a stun gun and explained that it was designed to make contact with a person's body and then shock the person. When asked if the stun gun was capable of causing serious physical injury, Officer Chambers responded, "If used the right way, absolutely."[6] He further testified that even if the taser had "a really low voltage," it would still be capable of causing severe pain. He went on to explain that the device was of the type that would typically be used for "personal defense," and had less voltage than the taser that he carries as a police officer.[7]

(7) In order to prove that an electronic control device is a dangerous instrument, the State is required to prove only that the device is designed to incapacitate a person. As discussed above, Officer Chambers described the device as a stun gun designed to shock a person, which was capable of causing serious physical injury if used correctly. He testified that even if it was of low voltage, it was still capable of causing severe pain, and that it was a device which would typically be used for personal defense. We are satisfied that the testimony of

---

[6] App. to Appellant's Opening Br. at 21.
[7] *Id.* at 24.

5

Officer Chambers and the attendant circumstances, such as Kade's being where he was in anticipation of a pre-planned fight, are sufficient to support a finding that the taser involved here is an electronic control device designed to incapacitate a person and thus a dangerous instrument. The definition of an electronic control device focuses on the purpose for which the device is designed. We are not persuaded that evidence concerning the specific voltage or functioning of the device in question is required.

(8) Second, Kade contends that the trial court incorrectly interpreted the statutory definition of a dangerous instrument as it is defined under 11 *Del. C.* § 222(4) and (10). Specifically, he contends that the Family Court erred by finding that all instruments labeled as tasers are dangerous instruments regardless of the instrument's design or characteristics. Kade did not fairly present this argument to the trial court. Therefore, he has waived this claim unless this Court "finds that the trial court committed plain error requiring review in the interests of justice."[8] Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9] There is no such error, here.

---

[8] *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995) (citing Supr. Ct. R. 8).
[9] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

_James T. Vaughn_
Justice