IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAWN TAYLOR, | § | |
| | § | No. 323, 2023 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2204012723(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted:    June 26, 2024
Decided:      August 14, 2024

Before **SEITZ**, Chief Justice; **TRAYNOR** and **GRIFFITHS**, Justices.

## ORDER

On this 14th day of August 2024, it appears to the Court that:

(1)    Following a bench trial, Shawn Taylor was found guilty of possession of a firearm by a person prohibited ("PFBPP") and sentenced to fifteen years in prison suspended after the minimum mandatory sentence of five years.[1]  He appeals to this Court, arguing that the State failed to present sufficient evidence to establish that he possessed the firearm.  We disagree and affirm.

---

[1] *See* 11 *Del. C.* § 1448(e)(1) ("[A] person who is a prohibited person . . . who knowingly possesses . . . a firearm . . . while so prohibited shall receive a minimum sentence of . . . [f]ive years at Level V, if the person does so within 10 years of the date of conviction for any violent felony or the date of termination of all periods of incarceration . . . imposed pursuant to said conviction[.]").

(2) On the night of April 24, 2022, Trooper Hunter Bordley of the Delaware State Police pulled over a two-door, dark grey Dodge Challenger for speeding. The vehicle was going twenty miles per hour over the speed limit. When Trooper Bordley approached the vehicle, he observed four people seated in the car — two in the front and two in the back. Taylor was seated in the back seat behind the driver. Naim Abdullah, a friend of the driver, sat next to Taylor in the backseat.

(3) During the stop, Trooper Bordley detected the odor of marijuana. Accordingly, he removed the driver from the vehicle and called for backup, which included Detective George Justice, to help remove the other passengers from the vehicle and control the scene. When Detective Justice attempted to remove the front seat passenger from the vehicle, Trooper Bordley, standing at the rear of the vehicle, observed Taylor lean toward the floorboard of the vehicle. Because the reason for the downward reach was unknown, Trooper Bordley decided to quickly remove Taylor from the car. Because the Dodge Challenger was a two-door coupe, removing Taylor from the back seat required pulling the front seat forward.

(4) After Taylor was removed, Trooper Bordley went back to the vehicle and searched the floorboard in front of where Taylor had been sitting. There, he found two items: a water bottle containing burnt marijuana and a loaded green firearm that, according to Trooper Bordley, was not visible when he removed Taylor from the back seat.

2

(5)     Delaware State Police collected the firearm for fingerprinting and DNA analysis. None of the prints or DNA samples were interpretable. During police interviews, both Taylor and Abdullah denied knowing to whom the gun belonged. Although Abdullah later took responsibility for the gun, Trooper Bordley testified that Abdullah had only done so in the hope that Taylor would be released and then post Abdullah's bail.

(6)     Due to their prior criminal histories, both Taylor and Abdullah were indicted for PFBPP, carrying a concealed deadly weapon ("CCDW"), possession of ammunition by a person prohibited ("PABPP"), and second-degree conspiracy. Abdullah pleaded guilty to CCDW and second-degree conspiracy. Taylor opted for a bench trial. At trial, the State's theory was that, when Taylor leaned forward, he had taken the gun, either from his person or Abdullah, and placed it under the driver's seat.

(7)     For some unknown reason, the police did not collect the water bottle containing the burnt marijuana. The court was therefore required to assume when weighing the evidence of the water bottle, had it been preserved, would have been exculpatory.[2] In Taylor's case, the court understood the required inference to be that, if preserved, forensic analysis of the water bottle would have established that

---

[2] *See Coleman v. State*, 289 A.3d 619, 624 (2023) ("[I]f the government fails to preserve important physical evidence, a criminal defendant may be entitled to an inference that the missing evidence would have been exculpatory.") (citing *Deberry v. State*, 457 A.2d 744, 753–54 (Del. 1983)).

Taylor was its sole prior possessor. Even with the inference—that Taylor was reaching for the water bottle—the court convicted him of PFBPP but acquitted him of all other charges.

(8)    On appeal, Taylor contends that the State's evidence was insufficient to support his conviction for PFBPP. To avoid usurping the role of the fact finder, the scope of our review of such a claim is limited.[3] We are not called upon to step into the fact finder's shoes and ask whether, upon review of the evidence, we believe Taylor is guilty of PFBPP.[4] Nor are we called to "rule out every hypothesis except that of guilty beyond a reasonable doubt."[5] Rather, we are required to determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found Taylor guilty beyond a reasonable doubt.[6] In doing so, we draw no distinctions between the direct and circumstantial evidence against Taylor.[7]

---

[3] *See Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

[4] *See id.* ("[T]he Court is not required to ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.").

[5] *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *see also Monroe v. State*, 652 A.2d 560, 567 (Del. 1995) ("[T]he State no longer needs to disprove every possible innocent explanation in pure circumstantial evidence cases[.]") (citing *Williams v. State*, 539 A.2d 164, 167 (Del. 1988)).

[6] *Monroe*, 652 A.2d at 563 (citations omitted).

[7] *Robertson v. State*, 596 A.2d 1345, 1355 (Del. 1991) (citing *Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990)).

(9)     With this standard in mind, we conclude that the State presented sufficient evidence to justify an inference by a rational finder of fact that Taylor, a person prohibited,[8] possessed the firearm found under the driver's seat of the Challenger and was, therefore, guilty of PFBPP.[9]   The possession required to establish PFBPP can be either actual or constructive.[10]  Actual possession is "having physical custody or control of a [firearm]."[11]  Constructive possession requires that a defendant know of the weapon's location and have the ability and intention to exercise control over it.[12]  Generally, testimony that the defendant was reaching toward an accessible spot where the police later found the weapon, either to conceal it or grab it, is sufficient to support a finding of possession.[13]

---

[8] Taylor stipulated at trial that he was a person prohibited from possession of a firearm under 11 *Del. C.* § 1448 and does not contest the issue on appeal.

[9] *See* 11 *Del. C.* § 1448(b) ("Any prohibited person . . . who knowingly possesses . . . a deadly weapon . . . while so prohibited shall be guilty of possession of a deadly weapon . . . by a person prohibited.").

[10] *Lecates v. State*, 987 A.2d 413, 425–26 (Del. 2009).

[11] *Id.* at 425 n.82 (quoting *United States v. Nenadich*, 689 F. Supp. 285, 288 n.1 (S.D.N.Y. 1988)).

[12] *Id.* at 426 (citations omitted).

[13] *See, e.g.*, *United States v. Bailey*, 553 F.3d 940, 947–49 (6th Cir. 2009) (holding that "to determine that the defendant had constructive possession over the firearm we require additional circumstantial evidence beyond the defendant's having driven the car in which the firearm was found" such as "police officer's testimony that he or she saw the defendant bend down to conceal something beneath the seat[.]"); *United States v. Flenoid*, 718 F.2d 867, 868–69 (8th Cir. 1983) (holding sufficient evidence of possession of a firearm by passenger where police officer testified he saw the defendant "bend down and reach under the car seat at the moment after the police stopped the car[.]"); *United States v. Clark*, 184 F.3d 858, 863–64 (D.C. Cir. 1999) (holding defendant's "reaching actions are sufficient to link him to the gun and to indicate that 'he had some stake in it–and the fact that it was located directly under his seat further indicates that he had 'some power over [it].'") (citations omitted).

(10) Here, Trooper Bordley testified that he observed Taylor reaching toward the floorboard in front of him and later found the gun in that spot. This testimony supports a rational inference that, during the reach, Taylor either placed the weapon under the seat—establishing his actual possession—or that he had seen the gun under the seat when entering the car and was trying to grab it—establishing his constructive possession of the gun. Even though the court was required to infer that the water bottle of marijuana found beside the gun was exculpatory, it was not required to give that inference controlling weight. The court decided that, despite the required inference, it did not have a reasonable doubt that Taylor actually or constructively possessed the gun. In view of all the evidence, this was not an irrational conclusion and, therefore, we will not disturb it.

(11) We note that Taylor's acquittal for CCDW does not affect our conclusion that there was sufficient evidence to support Taylor's conviction for PFBPP. Because the elements of CCDW and PFBPP are different, an acquittal of one does not suggest that the evidence cannot support a conviction for the other.[14] Particularly relevant here is CCDW's concealment element, which is not an element of PFBPP. "A person is guilty of carrying a concealed deadly weapon when the person *carries concealed a deadly weapon upon or about the person* without a

---

[14] *See Ryle v. State*, 271 A.3d 1142, 2022 WL 288084, at *2 (Del. Jan. 31, 2022) (ORDER) (citing 11 *Del. C.* §§ 1442, 1448(b); *Upshur v. State*, 420 A.2d 165, 168 (Del. 1980)).

6

license to do so[.]"[15]  Concealment means "hidden from the ordinary sight of another person . . . [meaning] the casual and ordinary observation of another in the normal associations of life."[16]  Given that Trooper Bordley could see the firearm under the driver's seat when he returned to the car, the trial judge could have determined that the State failed to prove concealment beyond a reasonable doubt.   Such a determination would not necessarily undermine the trial judge's finding that Taylor constructively possessed the firearm.

NOW, THEREFORE, IT IS ORDERED that the Superior Court's judgment is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[15] 11 *Del. C.* § 1442 (emphasis added).

[16] *Robertson v. State*, 704 A.2d 267, 268 (Del. 1997) (adopting majority rule and quoting *Ensor v. State*, 403 So.2d 349, 354 (Fla. 1981)) (ellipsis and brackets in original).