IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRANDON WAYS, | § | |
| | § | No.   547, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1611002979 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   October 10, 2018
Decided:   December 10, 2018

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

Upon appeal from the Superior Court.    **AFFIRMED**.

Jerome M. Capone, Esquire, Assistant Public Defender, Georgetown, Delaware, for Appellant, Brandon Ways.

Abby Adams, Esquire, Deputy Attorney General, Georgetown, Delaware, for Appellee, State of Delaware.

**VAUGHN**, Justice:

# I.   INTRODUCTION

Appellant, Brandon Ways, appeals from a Superior Court jury verdict finding him guilty of Aggravated Possession of Heroin in a Tier 5 Quantity, Drug Dealing in a Tier 4 Quantity, and Conspiracy in the Second Degree.   These charges were the result of a year-long investigation by the Delaware State Police and the Seaford Police Department into a large-scale drug trafficking operation of Ways and his associate, Torontay Mann.   Ways's co-defendant, Angeline Metelus, was also charged with these same crimes as a result of the investigation.   She was driving Ways's blue Jeep Cherokee (the "jeep") when the police followed it to an area in New Jersey.   Through their investigation, the police had been informed that Ways bought a large amount of cocaine and heroin every two weeks from sources in New Jersey.   They also knew from experience that New Jersey was a source for drugs transported into Delaware.   Upon the jeep's return to Delaware, Metelus was stopped and the jeep was searched pursuant to a search warrant.   Approximately 1,300 grams of heroin were found in a hidden compartment.

Ways makes two claims on appeal.   First, he contends that the Superior Court abused its discretion by denying his motion to suppress all evidence derived from the State's use of a mobile tracking device ("MTD") to track the jeep in the State of New Jersey.   Ways argues that the out-of-state tracking violated his rights under the Fourth Amendment to the U.S. Constitution, Article I, § 6 of the Delaware

1

Constitution, and 11 *Del. C.* § 2304 because (1) those provisions do not permit a Delaware judge to issue a warrant to track a vehicle after it leaves the state and (2) no New Jersey judge authorized the use of the MTD in New Jersey. Second, Ways contends that the Superior Court erred by denying his motion for judgment of acquittal, arguing that the State failed to prove the predicate element of venue for any charge in the indictment.[1]

We find that the Superior Court should be affirmed on both claims. First, we conclude that even if the out-of-state tracking did violate either of the constitutional provisions or the statute, the heroin the police found when they searched the jeep inevitably would have been discovered, and therefore suppression was not required, because the search was conducted pursuant to a valid search warrant that did not depend upon any evidence derived from the out-of-state tracking. Second, we conclude that the State presented sufficient evidence for a rational fact finder to conclude that at least one count in the indictment, the conspiracy charge, occurred in Sussex County, and therefore, venue was properly proved as to all counts under Superior Court Rule of Criminal Procedure 18.

---

[1] In presenting this issue Ways said the trial judge "abused her discretion" by denying the motion for judgment of acquittal, Appellant's Opening Br. at 2, but Ways rightly noted that the standard of review for a motion for judgment of acquittal is actually *de novo*, *id.* at 28; *see also Cline v. State*, 720 A.2d 891, 892 (Del. 1998).

## II. FACTS AND PROCEDURAL HISTORY

Ways was arrested on November 5, 2016, and was charged with the three crimes underlying this appeal. In the months prior to his arrest (since October 2015), the police were investigating Ways and Mann's large-scale drug trafficking operation. As part of the investigation, on or about September 23, 2016, they requested and obtained a Superior Court warrant authorizing the police to install and use an MTD on the jeep. The police were told by a confidential informant that Ways and Mann had obtained the jeep to transport large amounts of heroin and that the jeep had a large aftermarket hidden compartment for that purpose.

Although the search warrant authorizing the police to install and use the MTD on the jeep (the "MTD warrant") did not contain an express geographic limitation for tracking, it provided that the MTD "is to be installed within the State of Delaware."[2] It also noted, "Information likely to be obtained by the [MTD] will relate to violations of the Delaware Criminal Code, including but not limited to [drug] offenses . . . transpiring within Sussex, Delaware."[3] The police installed the MTD on the jeep in Delaware on October 14, 2016.

On November 4, 2016, the police were alerted by the MTD that the jeep had moved to the Walmart parking lot in Seaford, Delaware (in Sussex County). They

---

[2] App. to Appellant's Opening Br. at A3, D.I. 19.
[3] *Id.*

responded by sending officers to conduct physical surveillance of the jeep at that location.  The officers arrived at approximately 11:00 a.m.  While surveilling the jeep, the police observed Ways arrive in a green Dodge Ram, which was associated with Mann.  Ways exited the passenger side of the Dodge Ram and entered and exited the jeep multiple times, moving from the rear seat to the driver's seat and reaching deep into the cargo area.   At one point, they observed Ways transfer a large item (possibly a duffel bag) from the Dodge Ram to deep inside the cargo area of the jeep.   This behavior, the police believed, based upon their training and experience, was consistent with storing drugs and currency inside a hidden compartment.   The police then observed Ways drive the jeep a short distance to the Seaford Food Lion parking lot.   The Dodge Ram followed.   The police then saw Ways toss an unknown object into the back of the Dodge Ram and walk away.   The Dodge Ram then departed.

At approximately 4:20 p.m. on that same day, while visually surveilling the jeep in the Food Lion parking lot, the police observed an unknown female, subsequently identified as co-defendant Metelus, get into the jeep and drive away. They followed Metelus north through Delaware, over the Delaware Memorial Bridge into New Jersey, and up the New Jersey Turnpike to northern New Jersey, while the chief investigating officer tracked the MTD from Troop 4 in Georgetown, Delaware.

4

At approximately 7:40 p.m., Metelus took an exit off the New Jersey Turnpike. Sometime before then, the police lost MTD functionality but continued to maintain physical surveillance as they followed behind her. After she turned off the exit, however, they also lost physical surveillance in the high-density area off the Turnpike. About 20 minutes later, MTD functionality was restored, which enabled the police to reestablish physical surveillance. The police continued to follow her through the streets of the high-density area.

Eventually, at about 8:26 p.m., she stopped at a residence at 71 Mitchell Street. The police conducted drive-by surveillance and observed an unknown man speaking with Metelus as she was seated in the jeep. After about nine minutes, Metelus drove off. After the jeep left the residence, it was driven around "aimlessly without a destination," repeating the same pattern three times.[4] After stopping briefly at a location known as Pilot Place, where the police observed nothing unusual, the jeep returned to 71 Mitchell Street at approximately 9:01 p.m. The jeep was there for about 51 minutes. The police again conducted "drive by" surveillance rather than stationary surveillance and observed nothing of significance. The jeep then departed and was later seen to stop in a parking lot on Central Street, where it remained for several minutes. Nothing of significance was seen while the jeep was stopped there.

---

[4] App. to Appellant's Reply Br. at B132.

The jeep then left that location and began its return to Delaware. The police continued to follow the jeep. In argument before the trial court, the State also indicated that the police had approximately three units stationed near the Delaware Memorial Bridge awaiting the jeep's return to Delaware and that they could have set up a "geo fence" to alert them when the MTD (and thus the jeep) crossed the Delaware Memorial Bridge and returned to Delaware.[5]

While this was happening, the police requested and were granted a warrant to search the jeep (the "jeep search warrant") upon its expected return to Delaware. The application and affidavit in support of the jeep search warrant recited many of the same facts as the application for the MTD warrant, including information from four cooperating individuals, two of whom made controlled purchases of heroin from Ways and his girlfriend and one of whom told the police that Ways would be using the jeep because it had a larger hidden compartment than his other trafficking vehicle. The affidavit also detailed Ways's encounter with the jeep that the police had observed earlier that day.

Importantly, the application and affidavit did not rely on any information obtained solely from tracking the jeep with the MTD while it was outside of Delaware. The affidavit explained that the police had been conducting "physical

---

[5] App. to Appellant's Opening Br. at A228 ("The [MTD] had already been set up with a 'geo fence' alerting officers when the vehicle crossed the Kent and Sussex county border.").

6

surveillance" of the jeep (which was parked) on November 4, 2016,[6] when Metelus got in and drove off and that the police followed as she traveled through Delaware and into New Jersey. It provided, "On November 4, 2016, surveillance was maintained [on] Angeline Metelus who was still operating the Jeep . . . . Angeline Metelus was followed to a location known for high drug trafficking."[7] It concluded, "From training and experience it appeared Angeline Metelus made this trip specifically to New Jersey to obtained [sic] an amount of illegal narcotic and will be back en-route to be distributed in Sussex County, Delaware."[8] The affidavit did not recite any of the police's observations that were made after the police lost (and subsequently regained) visual surveillance of the jeep in New Jersey.

Pursuant to the jeep search warrant, the police stopped and searched the jeep in Dover, Delaware. In the jeep, the police found a concealed aftermarket compartment that contained approximately 1,300 grams of heroin. Thereafter, the police stopped Ways, who was driving a different car in Seaford, Delaware, and took him into custody.

Prior to trial, Ways filed an Omnibus Motion to Suppress that included the suppression argument he now raises on appeal as well as several others not pertinent here. Ways argued that the police exceeded their authority under the MTD warrant

---

[6] App. to Appellant's Opening Br. at A147, ¶ 35.
[7] *Id.* at A151, ¶ 38.
[8] *Id.*

when they tracked the jeep outside of Delaware because the MTD warrant did not, and could not, authorize out-of-state tracking. According to Ways, "Without a valid New Jersey [MTD] order, the Delaware police engaged in a warrantless search by monitoring [the MTD] in the State of New Jersey."[9]

The Superior Court denied Ways's motion to suppress. The court found that the issuing court had the authority to order the attachment of the MTD within Delaware and that such authority was sufficient to authorize the police to track the jeep, whether or not it remained within the boundaries of Delaware.

The indictment charged Ways and co-defendant Metelus with Aggravated Possession of Heroin in a Tier 5 Quantity, Drug Dealing in a Tier 4 Quantity, and Conspiracy in the Second Degree. The indictment identified Sussex County as the venue in which all alleged offenses took place. At the conclusion of the State's case at trial, Ways (joined by Metelus) moved for judgment of acquittal on all counts, contending that the State failed to prove venue for each count beyond a reasonable doubt. The Superior Court denied the motion, finding that any challenge to venue had been waived under Rule 12 and, in addition, venue was proper under Rule 18 of the Superior Court Rules of Criminal Procedure, which provides that venue is proper in the county in which any one of the charged offenses occurred. The court determined that the jury could conclude, from the evidence presented, that the

---

[9] *Id.* at A221, ¶ 41.

8

conspiracy (Count 3) began in Sussex County, making Sussex County a proper venue under Rule 18. The court then permitted the State to amend the indictment to specify that Counts 1 and 2 took place in Kent County.

## III. DISCUSSION

### A. *Motion to Suppress*

"We review the grant or denial of a motion to suppress for an abuse of discretion."[10] "[T]his Court will defer to the factual findings of a Superior Court judge unless those findings are clearly erroneous."[11] We review the trial judge's application of the law to his or her factual findings *de novo*.[12]

Because we conclude that the heroin found in the jeep inevitably would have been discovered, we do not address the difficult constitutional and statutory issues raised in this appeal, and we express no opinion thereon. "The 'inevitable discovery' exception to the exclusionary rule 'provides that evidence, obtained in the course of illegal police conduct, will not be suppressed if the prosecution can prove that the incriminating evidence "*would have* been discovered through legitimate means in the absence of official misconduct."'"[13] Here, even absent the

---

[10] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).

[11] *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007).

[12] *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008).

[13] *Hardin v. State*, 844 A.2d 982, 987 (Del. 2004) (emphasis added) (quoting *Cook v. State*, 374 A.2d 264, 267-68 (Del. 1977)); *see also Reed v. State*, 89 A.3d 477, 2014 WL 1494098, at *2 (Del. Apr. 14, 2014) (Table) (finding no inevitable discovery where the police *could have* arrested the driver and then searched him incident to arrest for driving without a license but *would not have* because "the standard practice is not to arrest [an unlicensed] driver").

out-of-state tracking, the police inevitably would have relocated and searched the jeep and thus found the heroin.

First and most importantly, as previously mentioned, the jeep search warrant application and affidavit, contrary to Ways's argument in his brief, did not rely on any information obtained solely as a result of the out-of-state tracking, and Ways does not otherwise challenge the sufficiency of the probable cause for the jeep search warrant. The affidavit detailed how the police had been conducting "physical surveillance" of the jeep on November 4, 2016,[14] and explained that the police observed Metelus get into the Jeep and drive north through Delaware and into New Jersey. It continued, "On November 4, 2016, surveillance was maintained [on] Angeline Metelus who was still operating the jeep . . . . Angeline Metelus was followed to a location known for high drug trafficking."[15] This information was obtained through visual surveillance. The affidavit did not recite any of the police observations that were made after the police lost (and subsequently regained) visual surveillance of the jeep.

Second, even without the aid of the MTD to relocate the jeep in New Jersey, the police would have regained visual surveillance of the jeep once it returned to Delaware for two reasons. For one, the police had three units stationed at the

---

[14] App. to Appellant's Opening Br. at A147, ¶ 35.
[15] *Id.* at A147, ¶ 35.

Delaware Memorial Bridge awaiting its return and the jeep returned to Delaware via that route, meaning the police likely would have resumed visual surveillance at that point. Additionally, the police could have—and it is reasonable to conclude they would have—used the MTD both (1) to alert them when the jeep crossed back into Delaware and (2) to track and thereby relocate the jeep in Delaware.

For these reasons, we find under these circumstances that the police inevitably would have relocated the jeep in Delaware, executed the search warrant, and discovered the heroin. Denial of Ways's motion to suppress was not error.

### B. Motion for Judgment of Acquittal

We review an appeal from the denial of a motion for judgment of acquittal *de novo*.[16] Specifically, we examine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime. For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence."[17]

In addition to proving each element of an offense, "[f]acts establishing jurisdiction and venue . . . must also be proved as elements of the offense."[18] Venue

---

[16] *Cline*, 720 A.2d at 892.

[17] *Id.*

[18] 11 *Del. C.* § 232; *see also id.* § 301(b) (requiring each element of an offense to be proved beyond a reasonable doubt).

11

"shall be had in the county in which the offense is alleged to have been committed."[19] But when two or more offenses are charged in the same indictment, "the prosecution may be had in any county in which one or more of the offenses is alleged to have been committed."[20] The situs of the crime "may be established by inference."[21]

Ways contends that 11 *Del. C.* § 232 requires venue to be proved for each crime as a separate element of each crime and that Superior Court Rule of Criminal Procedure 18 cannot expand the statutory requirement because "[i]n cases of conflict between rules of court and state statutes, the statutes prevail."[22] However, when § 232 is read together with Rule 18, it is apparent that venue for the trial as a whole (not each offense individually) must be proved as an element. That is, so long as the State proves beyond a reasonable doubt that at least one of the indicted crimes occurred in the county in which the trial court sits, venue is established as to all offenses properly joined in the indictment under Rule 18.

Here, venue was proved as to Counts 1 and 2 of the indictment under Rule 18 because Count 3, the conspiracy charge, made Sussex County a proper venue for the trial. The State presented evidence showing that Count 3 occurred (at least in part)

---

[19] Super. Ct. Crim. R. 18.
[20] *Id.*
[21] *Thornton v. State*, 405 A.2d 126, 127 (Del. 1979) (per curiam).
[22] Appellant's Opening Br. at 30 (quoting 2 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 36.6 (7th ed.)).

in Sussex County. Therefore, the Superior Court did not err in denying Ways's motion for judgment of acquittal.

## IV. CONCLUSION

For the foregoing reasons, the Superior Court did not err when it denied both Ways's motion to suppress and his motion for judgment of acquittal. Accordingly, the judgment of the Superior Court is affirmed.