IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD CUSHNER, | § | |
| | § | No.  531, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1710011753 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   June 5, 2019
Decided:   August 5, 2019

Before **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.   **AFFIRMED**.

Nicole M. Walker, Esquire, Assistant Public Defender, Wilmington, Delaware, for Appellant, Richard Cushner.

Brian L. Arban, Esquire, Deputy Attorney General, Wilmington, Delaware, for Appellee, State of Delaware.

**VAUGHN**, Justice:

## I.  INTRODUCTION

A Superior Court jury convicted the appellant, Richard Cushner, of Burglary in the Third Degree and two counts of Criminal Mischief.  Cushner contends on appeal that the Superior Court erred in denying his motion for judgment of acquittal because the only evidence connecting him to the crimes was a handprint that was discovered on the outside of a storage trailer he allegedly burglarized.  Relying on our case of *Monroe v. State*,[1] Cushner contends that the motion should have been granted because the State failed to present sufficient evidence to establish that his handprint was impressed at the time the crimes were committed.  For the reasons that follow, we conclude that *Monroe* is distinguishable and that the evidence in this case is sufficient to sustain Cushner's conviction.

## II.  FACTS AND PROCEDURAL HISTORY

Thomas Dicesare is the owner of Brandywine Motorwerks in Newark.  His business involves rebuilding Porsches into race cars and providing race support to his customers.  Some of his customers leave trailers used for storing and transporting their vehicles on Dicesare's lot.  The lot at Brandywine Motorwerks is fenced in, but the gate to the fence is open during regular business hours (Monday through Friday, 8:00 a.m. to 5:00 p.m.).  During regular business hours, at the time

---

[1]  652 A.2d 560 (Del. 1995).

in question, Dicesare was normally at the lot by himself, and anyone who wanted to enter the lot when the business was open could do so.

When Dicesare opened his lot on Monday morning, September 18, 2017, he discovered that the side door to an auto storage trailer he owned was open. He saw a black, left handprint on the outside of the trailer door.[2] The trailer door was white in color. He also saw that a padlock and latch on the door handle had been cut. Inside the trailer, he found that a duffle bag and a car cover were missing. He also found that the lock on another trailer belonging to a customer had been cut, but nothing had been taken from inside that trailer. Dicesare called the police.

The police gathered four fingerprints from the handprint on Dicesare's trailer door but found no other prints anywhere on that trailer or the customer's trailer. Three of the fingerprints had enough detail to make a comparison, and those prints were identified as belonging to Cushner.

At trial, Dicesare testified that the last time before Monday, September 18, he saw or entered his trailer was on Friday, September 15. He explained that he had worked in the trailer that day and had gone in and out of the same door on which the handprint was subsequently discovered, but had not noticed any handprint. He also testified that he and some friends went to his shop on the afternoon of Saturday, September 16, to hang a sign on his building. Although the gate to his shop's lot

---

[2] It appeared that the handprint was dirty due to grease, dirt, or some other substance.

was open while he and his friends hung the sign on the building, he was in the lot the whole time and did not see anything or anyone out of the ordinary. He further testified that he reviewed video from his surveillance camera from the time he left Saturday to the time he returned Monday morning and that this footage did not show the burglary. He explained, however, that each night the video footage went pitch black when the lights in the lot turned off as scheduled at 2:00 a.m. and remained that way until the sun rose. Finally, he testified that he had never seen or met Cushner before and that Cushner had no reason to be on his shop's lot.

The fingerprint examiner explained how he was able to match three of the prints to Cushner and that the fourth print was unusable. He was not able to give an opinion on when the prints were left on the trailer door, and although he explained that fingerprints are fragile such that they can be affected (and removed) by weather, the investigating officer testified that the black powder dust used to lift the handprint was still visible on the trailer the day before trial, which was ten months after the burglary.

The jury also heard testimony about Brandywine Motorwerks's business and saw pictures depicting its location and layout. Brandywine Motorwerks sits behind a car wash and a rental truck facility. There are two ways to enter its fenced-in lot: (1) through the main building itself (by entering the rear of the building and walking through) and (2) through a gate in the fencing that faces the car wash. Dicesare

3

was the only person with a key to the gate and building, and he testified that he shuts and locks the gate and the building every day when he leaves.

At the close of the State's case, Cushner moved for judgment of acquittal. The Superior Court denied his motion in a bench ruling. It reasoned that the facts were distinguishable from *Monroe* because "[t]his is not the glass or Plexiglass front door that everybody might use when they come in and out of that building."[3] The court continued, "This instead is on one trailer that belongs to the business and is used by the business owner and the person who actually has their property within it. It's not a regular commercial establishment where people go and browse and are about everywhere."[4] The court also noted that the timing here was inconsistent with *Monroe*. The court concluded:

> Those inferences are important, the timing inferences, the nature of the business inferences, the fact that it is a fenced yard and it's not one that people would generally go to are very key differences between this and Monroe and are also inferences that may allow—that would allow the rational trier of fact to find that that door that had its lock cut and was used to gain entry to then take property from within, that the handprint was left and the fingerprint was left at the time of that offense.[5]

---

[3] Appellant's Opening Br. Ex. A (Trial Tr. 173:7-9).
[4] *Id.* (Trial Tr. 173:9-12).
[5] *Id.* (Trial Tr. 175:3-12).

## III. DISCUSSION

We review the denial of a motion for judgment of acquittal *de novo*.[6] We must determine whether any rational trier of fact, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.[7] In making this inquiry, we do not distinguish between direct and circumstantial evidence,[8] and in cases involving purely circumstantial evidence, the State need not disprove every possible innocent explanation.[9]

Cushner's sole argument before the Superior Court and on appeal is that under *Monroe v. State*, "when the State relies solely on fingerprint evidence to establish identification, it must also demonstrate that the print could have been impressed only at the time the crimes were committed."[10] In *Monroe,* this Court recognized that "[a] substantial number of jurisdictions appear to have adopted" such a rule.[11] The Court also recognized that evidence may be sufficient to sustain a conviction "where the circumstances surrounding a defendant's fingerprints create a strong inference

---

[6] *Ways v. State*, 199 A.3d 101, 106 (Del. 2018).
[7] *Id.* at 106-07; *Gronenthal v. State*, 779 A.2d 876, 879 (Del. 2001).
[8] *Ways*, 199 A.3d at 107.
[9] *Monroe*, 652 A.2d at 567.
[10] Appellant's Opening Br. at 9 (citing *Monroe*, 652 A.2d 560).
[11] *Monroe*, 652 A.2d at 564.

5

that the defendant was the perpetrator."[12]   Such circumstances include, but are not limited to:

> [W]hether the prints were found in a private or public structure (*i.e.*, whether the object in question was generally-accessible); whether the defendant had any special access to the object in question which may provide an alternative explanation for the presence of the prints; and whether the manner of placement of the prints on the object is supportive of the defendant having placed them there while committing the charged offense.[13]

In *Monroe*, an appliance store in Wilmington was burglarized in the early morning hours when the store was closed.[14]   Seven camcorders and four video cassette recorders were stolen.[15]   The point of entry was the store's front door, which was made of plexiglass.[16]   The lower half of the plexiglass door had been broken, and eight prints belonging to Monroe were found on at least one of the broken pieces of plexiglass.[17]   A total of thirty-one other prints were also found.[18] Seventeen of these belonged to someone other than Monroe, but investigators did not know whether they belonged to more than one person or the identify of their owner (or owners).[19]   The other fourteen were of insufficient quality to make a

---

[12] *Id.*
[13] *Id.*
[14] *Id.* at 562.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 562, 566.
[18] *Id.* at 566.
[19] *Id.*

comparison.[20]    This Court held that the presence of Monroe's fingerprints on the plexiglass pieces from the front door—the only evidence connecting Monroe to the crime—was insufficient to sustain a conviction because the front door was generally accessible to the public and there was no evidence whatsoever as to when his prints were left on the door.[21]    Simply put, the fingerprints were found on plexiglass pieces from a door "that, in its natural use, tend[ed] to accumulate many fingerprints."[22]    In reaching this decision the Court carefully limited its holding: "Our holding is limited to the facts before us today.    We express no opinion on the sufficiency of fingerprint evidence to establish guilt in cases involving different circumstances."[23]

The specific factual circumstances of *Monroe* are not present in this case. Here, in contrast to *Monroe*, where the prints were found on an object that, in its natural use, would accumulate many fingerprints,[24] Cushner's prints were found on a door to an auto storage trailer that, while technically accessible to the public at certain times, was not the type of object that in its natural use, and in its actual use at Brandywine Motorwerks during the relevant time period, would tend to accumulate many fingerprints.    As the Superior Court explained in its bench ruling,

---

[20] *Id.*
[21] *Id.* at 566-67.
[22] *Id.* at 567.
[23] *Id.*
[24] *Id.*

Brandywine Motorwerks is "not a regular commercial establishment where people go and browse and are about everywhere."[25] And unlike *Monroe*, where numerous fingerprints were found, seventeen of which were affirmatively not Monroe's,[26] three of the four prints here were identified as Cushner's, and the fourth print, which did not have enough detail to make a comparison, was apparently from the same handprint.

Furthermore, in *Monroe* there was no evidence as to when any of the prints were left on the door,[27] but here there was evidence indicating that the fingerprints were impressed on the trailer door during the weekend of the burglary at a time when the lot was locked and closed to the public. Dicesare testified that he had been in and out of the trailer several times on Friday and had not noticed the print then. Although the gate to the lot was open on Saturday while he and his friends hung a sign on the building, he testified that he was in the lot the whole part of the day he was there putting up the sign where he could have seen (but apparently did not see) any strangers on the premises. The factual differences between *Monroe* and this case are significant and lead to the conclusion that *Monroe* is not applicable to the facts of this case.

---

[25] Appellant's Opening Br. Ex. A (Trial Tr. 173:12-14).
[26] *Monroe*, 652 A.2d at 566.
[27] *Id.*

Ultimately, the circumstances surrounding Cushner's fingerprints—the nature of the business and the trailer where his prints were found, the lack of other fingerprints on the trailer, the open door and cut locks, and Dicesare's testimony as to the timeline—"create a strong inference that [he] was the perpetrator."[28] We therefore conclude that there was sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that Cushner was the one who burglarized the trailer.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

[28] *Id.* at 564.