IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEREK HOPKINS, | § | |
| | § | No. 102, 2022 |
| Defendant-Below, | § | |
| Appellant, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | Cr. ID No. K2001012867 |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: November 16, 2022
Decided: February 20, 2023

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Zachary A. George, Esquire, Hudson Jones Jaywork & Fisher, Dover, Delaware, for Appellant, Derek Hopkins.

Brian L. Arban, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

**VAUGHN**, Justice:

The Defendant-Below, Appellant, Derek Hopkins, appeals from his convictions in Superior Court for Drug Dealing, Disregarding a Police Officer's Signal, Conspiracy in the Third Degree, Resisting Arrest, Illegal Possession of a Controlled Substance (2 counts), Driving While Suspended or Revoked, Reckless Driving, Failure to Transfer Title and Registration, Unreasonable Speed, and Failure to Stop at a Stop Sign. He was also found "responsible" for possession of marijuana.[1] He makes three claims. First, he claims that the Superior Court abused its discretion by refusing to accept a plea agreement offered by the State and the defense on the morning of trial. Second, he claims that the Superior Court erred as a matter of law by denying his motion for judgment of acquittal as to the charge of Drug Dealing. Finally, he claims that the cumulative effect of the errors was to prejudice his substantial rights, requiring the convictions to be vacated. We find no merit to the defendant's claims and affirm.

### FACTS AND PROCEDURAL HISTORY

On January 21, 2020, around 10 p.m., Delaware State Police Officers Brian Holl and Lloyd McCann were patrolling the area of Frederica, Delaware in an unmarked SUV. They observed the defendant driving a Ford Crown Victoria on

---

[1] "[S]imple possession of a personal use quantity of marijuana is a civil, not criminal, offense." *State v. Murray*, 158 A.3d 476, 479 (Del. Super. 2017); *see* 16 *Del. C.* § 4764(c)(1). It is our understanding that, in cases involving marijuana possession as a civil violation, a court will find an individual "responsible" or "not responsible."

Bowers Beach Road. They ran the tag number of the defendant's vehicle and discovered that the vehicle's title and registration had not been properly transferred. Trooper Holl, the driver of the police vehicle, activated his emergency lights and attempted to stop the defendant's vehicle. The defendant failed to comply and attempted to flee at a high rate of speed. He continued to travel at a high rate of speed, running through several stop signs. Finally, he lost control of his vehicle and crashed into a cement porch at a residence. When the officers exited their unmarked SUV and approached the defendant's vehicle, he attempted to pull away in reverse. Trooper Holl then broke the driver's door window with his baton. Officer McCann unlocked the driver's side door, removed the defendant from the vehicle and, despite the defendant's resistance, secured him with handcuffs. A female passenger was also taken into custody.

Upon the defendant's arrest, Officer McCann conducted a search of his person. The officer found two bags containing a green leafy substance, suspected and later confirmed to be marijuana, and a prescription pill bottle containing a white rock substance, suspected and later confirmed to be crack cocaine. The cocaine weighed in at 1.3 grams. Officer McCann also found $573 cash in the defendant's pocket. The defendant stated to Officer McCann that the substances belonged to him, but signed a Notice of Forfeiture form indicating that the money was not his.

Heroin was also found in the vehicle. A bundle[2] of heroin was discovered in the "back passenger floorboard area."[3] Bags containing the heroin were labeled "Armany AX."[4] When asked about this labeling, Officer McCann explained: "It's common for packaged heroin to have a -- it's stamped, but it's the brand . . . of the heroin."[5] The following day, Trooper Holl discovered bags of heroin bearing the label "Hell Cat"[6] in the back seat of his vehicle where the defendant's female passenger had been the previous evening. She was charged with possession of the "Hell Cat" heroin. No drug paraphernalia of the kind used to ingest drugs was found in the vehicle or on the defendant's person.

The defendant's indictment occurred during the public health and judicial emergencies caused by COVID-19. During that time, emergency restrictions on judicial branch activity were in effect and jury trials were not being held. The emergency declarations were rescinded on July 13, 2021, and the Superior Court began to address the significant backlog of cases which were then pending. The defendant's trial was scheduled for Monday, October 18, 2021, and Thursday, October 14, 2021, was established as a plea-by-appointment deadline. In other

---

[2] Officer McCann, who testified about the discovery of this heroin in the vehicle, described a bundle of heroin as a collection of nine to thirteen bags of heroin which are wrapped together, usually with a rubber band.

[3] App. to Opening Br. at A-280.

[4] *Id.*

[5] *Id.*

[6] *Id.* at A-285.

words, any plea agreement between the State and the defendant was required to be presented to the court by October 14, and a plea agreement tendered after that date was subject to rejection by the court as untimely.

In addition to this case, the defendant had two other outstanding cases, one which included drug charges and one which included drug and weapons charges. They were also scheduled for trial for October 18. The State offered a plea agreement to the defendant a week before the plea-by-appointment deadline that would have resolved all three of the defendant's cases with a recommended sentence of three years at Level V. This plea offer was not accepted by the defendant. At a pretrial conference on Friday, October 15, the Superior Court assigned this case as the one that would go forward for trial on October 18, with the other two cases being given new trial dates. Negotiations between defendant's counsel and the State continued past the October 14 deadline and into the weekend. These continued negotiations resulted in the State making a new plea offer that would resolve this case and the other drug case with a recommendation for a sentence involving only probation. The new offer did not include the drugs and weapons case and left it unresolved, to be discussed at a later time.

On the morning scheduled for trial, the State and defense counsel appeared before the judge who was calling the criminal trial calendar and informed him of the new plea offer made after the plea-by-appointment deadline. Defense counsel

5

indicated that he believed the defendant would be receptive to the plea offer, but that he had been unable to speak with him that morning before appearing in court. The court expressed frustration with the parties for this and rejected the plea offer, explaining:

> And, again, in the COVID scenario, I've had a hundred something jurors get thrown in today. And the parties need to come to grips with that and they need to understand that and they need to take that seriously when we're handling these matters . . . . I've got to worry about the State's concerns, the defendant's concerns the jurors and the court system's concerns as a whole, and we need to make sure that these deadlines are worked . . . . I'm hearing the parties got together, did more negotiating over this weekend, decided they were going to resolve matters that would take this case off the calendar. And that's not acceptable.[7]

Later that morning, defense counsel and the State met with the assigned trial judge in chambers. During this office conference, the court informed the parties that the earlier rejection of the plea offer would not be changed or reconsidered. The trial judge explained:

> And let me just make this clear. The case is regarding the Court's discretion to accept a late plea, and based on the principle that the Court has to manage its docket, and the Court cannot effectively manage its docket if counsel do not follow the directives of the Court. The Court has made it clear countless times to counsel that we have a plea-by-appointment deadline that has been in effect now for a number of months, and, particularly, in the context of the pandemic, and requiring jurors to expose themselves to

---

[7] App. to Opening Br. at A-182.

danger by coming out and serving, which they have been doing, that we must abide by that plea-by-appointment deadline. If the Court begins to allow that deadline just to be disregarded, and then plea negotiations to continue after the plea-by-appointment deadline, then the Court loses control over its docket.[8]

The court further reiterated that there existed no rule of law that mandated that plea agreements must be accepted by the court, especially in cases when they are presented outside the established deadlines.

Trial by jury then proceeded. During the trial, Trooper Holl and Officer McCann testified about the events surrounding the defendant's arrest. Officer McCann testified to a number of points relevant to the drug dealing charge:

- Drug dealers do not usually have drug paraphernalia—the "kind to ingest drugs"[9]—with them.
- No such drug paraphernalia was found in the defendant's vehicle.
- "[D]rug dealers usually have a larger amount of currency in smaller denominations"[10] and the defendant's money included "one $1 bill, one $2 bill, 12 $5 bills, 23 $10 bills and 14 $20 bills."[11]
- "[I]t's common for drug dealers to separate themselves from funds that are a profit of drug sales."[12]
- "[I]n my experience, drug dealers are those that are selling drugs for any kind of profit. They usually have a larger quantity of narcotics, usually multiple variants of narcotics, as well as some sort of digital scale to be

---

[8] *Id.* at A-169.
[9] *Id.* at A-281.
[10] *Id.*
[11] *Id.*
[12] *Id.* at A-286.

7

used with any kind of drug paraphernalia associated with those that are actually selling the narcotics."[13]

- Officer McCann "use[d] force to pull [the defendant] out of the car"[14] and after being laid on the ground with his hands underneath of his body, the defendant's hands had to be physically pulled behind his back so that he could be handcuffed, as the defendant "would not comply with [Officer McCann's] verbal commands to put his hands behind his back."[15]
- 1.3 grams of cocaine is "more than a user amount"[16] and, in Officer McCann's experience, users of cocaine usually do not possess quantities over one gram.
- Officer McCann did not know how much 1.3 grams of cocaine would cost or how much cocaine a person could get for $50.
- Officer McCann "think[s]"[17] the amount of cocaine typically bought by users "all depends on how much money the person that wants to buy the drugs has."[18]
- When crack cocaine is sold, the dealer will break a piece off of the rock, and that piece "could be as small as a piece of sand."[19]
- Crack cocaine is usually consumed by smoking, and some methods involve use of a cigarette or crack pipe.
- Officer McCann "assum[ed]"[20] cocaine could be ingested orally, but he "never had anyone say that they ingest crack cocaine by eating it or swallowing it."[21]

Officer McCann explained that he "can't testify to [the defendant's] intent[,]"[22] and

---

[13] *Id.* at A-281.
[14] *Id.* at A-277.
[15] *Id.*
[16] *Id.* at A-289.
[17] *Id.*
[18] *Id.*
[19] *Id.* at A-290.
[20] *Id.* at A-286.
[21] *Id.*
[22] *Id.* at A-287.

8

further explained, "No, I mean I'm not in his head. But the totality of the circumstances with drugs, money, and him fleeing from the police, you could conclude that there was drug sales."[23]

At the conclusion of the State's case, defense counsel moved for judgment of acquittal as to the drug dealing charge. The drug dealing count charged the defendant with knowingly delivering or possessing with intent to deliver cocaine. Defense counsel argued that there was a "decidedly insufficient amount of evidence to submit [the charge] to the jury on the issue of intent to deliver."[24] The motion was denied.

## STANDARD OF REVIEW

We review a court's rejection of a plea agreement for abuse of discretion.[25] "Abuse of discretion occurs when, among other things, the trial judge has 'ignored recognized rules of law or practice so as to produce injustice.'"[26]

This Court reviews the denial of a motion for judgment of acquittal *de novo*.[27] Specifically, this Court examines whether any rational trier of fact, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most

---

[23] *Id.* Officer McCann elaborated: "Without him stating, yes, I'm a drug dealer, yes, I do not know." *Id.*

[24] *Id.* at A-297.

[25] *Berryman v. State*, 897 A.2d 767, 2006 WL 954242, at *2 (Del. Apr. 11, 2006) (ORDER).

[26] *Longford-Myers v. State*, 213 A.3d 556, 558 (Del. 2019) (quoting *Edwards v. State*, 925 A.2d 1281, 1284 (Del. 2007)) (citations omitted).

[27] *Ways v. State*, 199 A.3d 101, 106 (Del. 2018).

favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime.[28] "For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence[,]"[29] and in cases involving purely circumstantial evidence, the State need not "disprove every possible innocent explanation[.]"[30]

## DISCUSSION

The defendant first claims that the Superior Court abused its discretion by rejecting the parties' late plea agreement.[31] He contends that the State's making of a revised offer after the plea-by-appointment deadline had passed, an offer not available to the defendant on or before the plea-by-appointment date, constituted good cause to accept the plea agreement on the morning of trial.[32]

Superior Court Criminal Rule 11(e)(3) states: "*Time of Plea Agreement Procedure.* Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court."[33] "A defendant has no constitutional right to

---

[28] *Id.* at 106-07; *Gronenthal v. State*, 779 A.2d 876, 879 (Del. 2001).
[29] *Ways*, 199 A.3d at 107 (quoting *Cline v. State*, 720 A.2d 891, 892 (Del. 1998)).
[30] *Monroe v. State*, 652 A.2d 560, 567 (Del. 1995).
[31] Opening Br. at 15.
[32] *Id.*
[33] Super. Ct. Crim. R. 11(e)(3) (emphasis in original).

10

have the court accept a plea agreement.[34] Trial courts have significant control over and discretion in the management of their dockets and the scheduling of cases."[35]

The morning of trial, after being informed of the updated plea offer, the judicial officer calling the criminal trial calendar asked the State three times to provide a reason as to why the plea offer was not discussed before the plea-by-appointment deadline. The State explained that over the weekend defense counsel had broached the possibility of negotiating a plea agreement for this case and the other drug case, and leaving the third case, the drugs and weapons case, which carried mandatory time, for another day. This was an approach that had not been considered before. The State indicated that it was willing to consider this approach and over the weekend made the above-described offer to resolve this case and the other case involving drug charges.

A similar discussion occurred in an office conference with the trial judge. The trial judge asked for a demonstration as to whether some kind of "change in circumstances . . . prevented the State from making this offer before the plea-by-appointment deadline[.]"[36] The trial judge reiterated: "can anyone offer me any

---

[34] *Berryman v. State*, 897 A.2d 767, 2006 WL 954242, at *2 (Del. Apr. 11, 2006) (ORDER) (quoting *Slade v. State*, 746 A.2d 277, 2000 WL 140039, at *1 (Del. Jan. 24, 2000) (citation omitted)) (internal quotation marks omitted).

[35] *Berryman*, 2006 WL 954242 at *2 (quoting *Washington v. State*, 844 A.2d 293, 295 (Del. 2004)) (internal quotation marks omitted).

[36] App. to Opening Br. at A-170.

11

reason why this couldn't have occurred before the plea-by-appointment deadline?"[37]

After hearing responses from both the State and the defendant's counsel, which were similar to those given to the judge calling the criminal calendar, the court stated that the previous ruling on the matter would remain intact.

It appears that the revised plea offer evolved from continued negotiations of the parties after expiration of the plea-by-appointment deadline, and not from any new or unexpected developments in this case. We understand the logic of the defendant's contention – that he was denied a probationary plea for two cases that was not available to him until after the plea-by-appointment deadline had passed.[38] Both of the Superior Court Judges involved, however, explored with counsel the reasons why the revised plea offer was made after expiration of the plea-by-appointment deadline, and both concluded that no good cause existed for the untimely plea offer. After carefully considering the defendant's argument, our conclusion is that the Superior Court acted within its broad discretion in deciding that good cause did not exist to justify accepting an untimely plea agreement. No abuse of discretion occurred. Accordingly, we reject the defendant's first claim.

The defendant's second claim that the Superior Court's denial of his motion for judgment of acquittal was error.[39] We disagree. The evidence, viewed in the

---

[37] *Id.*

[38] Opening Br. at 15-16.

[39] *Id.* at 22.

light most favorable to the State, is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of drug dealing.[40]

The defendant claims that he could not be guilty beyond a reasonable doubt on the drug dealing charge "because there is no evidence to support a finding that [he] had the requisite state of mind – *intent* to deliver the cocaine found in his possession."[41] He argues that Officer McCann's testimony "contort[ed] the facts" to support a bias against the defendant; that the cocaine did not weigh enough to be on a tier schedule; that it was not packaged in multiple bags; that police did not observe any drug sales; that he did not admit possessing the cocaine with the intent to deliver it; and that his flight was not probative of an intent to sell the cocaine because he was in possession of illegal substances.[42]

In *Laws v. State*, this Court stated the following regarding proof of "intent to distribute:"

> [T]his Court held that an "intent to distribute" may be established through evidence of an additional element beyond mere possession. This additional element may include: (i) an admission by the defendant that the drugs were not for personal use; (ii) expert testimony about the amount or type of packaging generally used by sellers vs. users; or, (iii) some other credible evidence.[43]

---

[40] *See Ways v. State*, 199 A.3d 101, 106-07 (Del. 2018); *Gronenthal v. State*, 779 A.2d 876, 879 (Del. 2001).
[41] Opening Br. at 23 (emphasis in original).
[42] *Id.* at 26.
[43] *Laws v. State*, 840 A.2d 641, 2003 WL 22998850, at *1 (Del. Dec. 18, 2003) (ORDER) (citing *Cline v. State*, 740 A.2d 891, 892-93 (Del. 1998)) (footnote omitted).

Officer McCann provided testimony, without objection, as an expert. He testified that the defendant carried $573 on his person in denominations of $20 and under and drug dealers often have large sums of money in small denominations; the defendant claimed the money was not his, and drug dealers often try to "separate themselves" from drug profits;[44] 1.3 grams of cocaine was "more than a user amount[;]"[45] the defendant did not possess drug paraphernalia and drug dealers usually do not have drug paraphernalia with them; the defendant possessed more than one kind of drug, as drug dealers often do; and the defendant resisted arrest.[46] This evidence, viewed in the light most favorable to the State, was more than sufficient to justify a rational trier of fact's finding of guilt beyond a reasonable doubt for drug dealing.[47]

The defendant's third claim is that cumulative error occurred in the court below. In light of our decisions that no abuse of discretion occurred with respect to the rejection of the late plea agreement and that no error occurred with respect to the denial of the defendant's motion for judgment of acquittal, we find that no cumulative error occurred.

---

[44] App. to Opening Br. at A-286.
[45] *Id.* at A-289.
[46] Trooper Holl also testified to the fact that the defendant resisted arrest.
[47] *See Ways v. State*, 199 A.3d 101, 106-07 (Del. 2018); *Gronenthal v. State*, 779 A.2d 876, 879 (Del. 2001).

14

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is **AFFIRMED**.

**TRAYNOR,** Justice concurring:

Although I agree with my colleagues that Hopkins' convictions should be affirmed, I write separately to express my misgivings over the strength of the prosecution's evidence on the charge of drug dealing. In the context of this case, that charge required proof beyond a reasonable doubt that Hopkins possessed cocaine with the intent to deliver it. If not for the deferential standard applicable to motions for judgment of acquittal, I would have grave reservations about the adequacy of the proof of Hopkins' intent. In my view, Officer McCann's testimony, admittedly unrebutted by Hopkins, that the quantity of cocaine Hopkins possessed— 1.3 grams—was "more than a user"[48] amount, but one gram would not be, is suspect. Moreover, the logic of the officer's testimony that Hopkins' claim that the money found in Hopkins' back pocket was not his and Hopkins' lack of cooperation are indicative of drug dealing instead of simple possession is puzzling. And finally, the officer's lack of familiarity with the street value of the cocaine seized from Hopkins[49] calls into question his expertise in this area.

But we are left with the fact that Hopkins did not challenge Officer McCann's expertise or object to any of the opinions he offered. I therefore reluctantly conclude

---

[48] App. to Opening Br. at A289. The basis for the officer's opinion that a crack-cocaine user would not typically possess more than one gram was that he had "stopped a lot of users and they usually don't have more than a gram on them." *Id.*

[49] When asked if he knew the "cost[]" of 1.3 grams of cocaine, the officer candidly acknowledged that he had "no idea." *Id.*

that, viewing the evidence in the light most favorable to the State, a rational trier of fact could rely on Officer McCann's expert opinion—based on his largely unchallenged interpretation of the evidence seized incident to Hopkins' arrest—and find Hopkins guilty of drug dealing beyond a reasonable doubt.