IN THE SUPREME COURT OF THE STATE OF DELAWARE

DWAYNE L. PEARSON, §
§
Defendant Below, § No. 268, 2024
Appellant, §
§ Court Below: Superior Court
v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No. 2301003924 (N)
§
Appellee. §

Submitted: April 9, 2025
Decided: June 24, 2025

Before **SEITZ**, Chief Justice; **VALIHURA, TRAYNOR**, **LEGROW**, **GRIFFITHS**, Justices, constituting the Court *en Banc*.

## **ORDER**

The Court, having considered the briefs and the record below, and after oral argument, rules as follows:

(1)     Dwayne Pearson appeals his convictions for sexual abuse of a child by a person in a position of trust, authority or supervision.  He argues that the Superior Court erred by denying his motion for judgment of acquittal because Pearson was not the victim's direct supervisor, and his interactions with the child did not place him in a "position of trust, authority or supervision."  He also argues that the statute defining this relationship is unconstitutionally vague, as applied to him, because the

jury was permitted to convict him based on a category of persons not defined in the statute. For the reasons set forth below, we affirm Pearson's convictions.

(2) We recite the facts necessary to decide the appeal. Located in New Castle County, Mill Creek Fire Company is one of about twenty-five Delaware volunteer fire companies.[1] Mill Creek has a junior membership program for youth to train as firefighters.[2] Candidates are voted in and then trained before riding along on emergency calls.[3] In May 2022, fifteen-year-old M.M. was voted in as a Mill Creek junior firefighter.[4]

(3) On July 16, 2022, the Mill Creek and Belvedere fire companies held a joint training exercise in Pennsylvania. The two fire companies worked with each other often.[5] M.M. attended and met Pearson, the Belvedere Deputy Chief. To M.M., Pearson was "high up."[6] He had spent seventeen years in the Belvedere

---

[1] App. to Appellant's Opening Br. at A16 [hereinafter A__] (Testimony of Mill Creek Fire Chief Baronie).

[2] A18.

[3] A18–20.

[4] A28–29 (Testimony of Laura Liebal, M.M.'s mother).

[5] App. to State's Answering Br. at B1 at 5:28 [hereinafter B1 at __] (Trial Ex., Interview of Pearson, Sept. 26, 2022) ("[We] run more calls with [Mill Creek] than any other company.").

[6] A47 (Testimony of M.M.).

company.[7]  As the "second in command" under the Belvedere fire chief, Pearson oversaw the station's operations.[8]  M.M. thought he was the fire chief.[9]

(4)     Pearson took a special interest in M.M.  He talked with her about school, how old she was, and her time at Mill Creek.[10]  M.M. had not spoken to the Mill Creek fire chief yet, so she felt "[s]pecial" that "another chief of another fire company was talking to [her]."[11]  She "thought [she] could learn a lot from him."[12]  He also invited her to train with him.[13]  During their interactions, Pearson's sunglasses ended up on M.M.'s head.[14]

(5)     The Mill Creek and Belvedere fire chiefs were concerned about Pearson's interactions with M.M.[15]  Belvedere's fire chief warned Pearson that M.M. was underage so that he would leave her alone.[16]  After training, the two fire

---

[7] B1 at 3:51.

[8] B1 at 3:30.

[9] A47 (Testimony of M.M.).

[10] See A47–48.

[11] A48–49; see A48 ("Q. What was your initial impression of [Pearson]? A. I was like, woo, big man, big shot.").

[12] A49.

[13] A48.

[14] A50.

[15] A149–50 (Testimony of Mill Creek Fire Chief Johnson).

[16] A150; A152.

3

companies returned to Belvedere for food where Pearson and M.M. continued to talk.[17] During lunch, M.M. headed to the bathroom. On the way, Pearson walked by and slid his hand across her stomach.[18]

(6) M.M. saw Pearson next when the Belvedere company covered the Mill Creek area after the loss of a Mill Creek firefighter.[19] That morning, M.M. was the only Mill Creek volunteer going on calls with the Belvedere company.[20] After returning from her first call, she saw Pearson in the radio room. Pearson and M.M. began talking about firefighting, including how M.M. "wants to be a fireman."[21] At one point, Pearson "turned [the conversation] into more of a sexual thing."[22] Pearson told M.M. that he wanted to "pin [her] up against the wall, choke [her], and then kiss [her]."[23] M.M. was in shock but continued to talk with him.[24] She "still looked at him like somebody [she] could learn from besides everything else that he said."[25]

---

[17] A51–52 (Testimony of M.M.).

[18] A52; A54.

[19] A55.

[20] A56.

[21] B1 at 8:37.

[22] A59 (Testimony of M.M.).

[23] A61.

[24] *Id.*

[25] A62.

After that, Pearson and M.M. exchanged Snapchat contact information.[26] They began texting frequently.[27]

(7)    On August 18, 2022, M.M. agreed to meet Pearson. She left the Mill Creek station and walked to the Dunkin' Donuts next door. He picked her up in his Belvedere work truck and drove five minutes to a parking lot with no cars or cameras.[28] Pearson parked, got out of his truck, and walked over to M.M.'s side. Pearson then kissed M.M. and forced her to perform a sexual act on him.[29] He drove her back to the Dunkin' Donuts and dropped her off. M.M. returned to volunteer at the station.[30]

(8)    After Pearson apologized for making M.M. feel "it was all sexual," she agreed to meet him on August 24.[31] Pearson picked M.M. up from Fulton Bank, next door to the Mill Creek station. He drove to a parking lot near "old Mill

---

[26] A65.

[27] *See* A84 (M.M.: "[I]t's just the same old thing again . . . . Talking every day and texting 24/7, that kind of thing."). Pearson also made sexual advances toward M.M. while she was on the phone in the firehouse's library. A66–67.

[28] A77–78.

[29] A80–81.

[30] A83.

[31] A85.

Creek."[32]  Once there, Pearson again walked over to M.M.'s side of the truck.[33] Pearson sexually assaulted her.[34]  Following this, Pearson drove M.M. back to Fulton Bank, and M.M. returned to the station.[35]

(9)    Pearson later asked M.M. to delete any incriminating evidence of their relationship.[36]  He also asked her to lie about Pearson's interest in her.[37]  Eventually, M.M. confided in her mother and sister about the August 24 incident.[38]  A grand jury indicted Pearson for Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision ("Sexual Abuse") – two counts in the first degree and one count in the second degree – Rape in the second and fourth degrees, and Unlawful Sexual Contact in the second degree.

(10)    After the State rested its case during Pearson's trial, Pearson moved for a judgment of acquittal.  The Superior Court reserved decision.  The jury found Pearson guilty of all counts.  Pearson renewed his motion for a judgment of acquittal. He argued that the State had not established that he stood in a "position of trust,

---

[32] A91–92.

[33] A92.

[34] A92–A93; A100–101.

[35] A104.

[36] A111–12.

[37] A112.

[38] A124–25.

authority or supervision" to be convicted of the Sexual Abuse counts.[39] He also claimed that the statute defining "position of trust, authority or supervision" was unconstitutionally vague on its face and as applied to him.[40]

(11) The Superior Court denied his motion.[41] The court reviewed the evidence at trial and determined that the State had offered sufficient evidence to show that Pearson stood in a "position of trust, authority or supervision" under subsection (e)(7) of the statute defining the relationship.[42] The court also found that the statute was not unconstitutionally vague. The statute, the court held, provided sufficient notice of prohibited conduct and was clear enough that a person of ordinary intelligence could understand the statute's meaning and application.[43] On July 3, 2024, the court sentenced Pearson to thirty-five years at Level V custody followed by decreasing levels of supervision.

(12) On appeal, Pearson does not dispute his underlying conduct. Rather, he challenges the sufficiency of the evidence establishing that he was in a "position

---

[39] A165–68 (Pearson's Mot. for J. Acquittal).

[40] A168–71.

[41] *State v. Pearson*, 2024 WL 2891171 (Del. Super. Ct. July 3, 2024).

[42] *Id.* at *3.

[43] *Id.* at *2–3.

of trust, authority or supervision" for the Sexual Abuse convictions.[44]  He also challenges the statute's constitutionality – although now only as applied to him.  The Court reviews the denial of a motion for judgment of acquittal *de novo*.[45]  We examine whether "any rational trier of fact, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime."[46]  We also review constitutional questions and statutory interpretation issues *de novo*.[47]

(13)   Under Title 11, Section 761 of the Delaware Code:

(e) "Position of trust, authority or supervision over a child" includes, but is not limited to:

---

[44] 11 *Del. C.* § 778 ("A person is guilty of sexual abuse of a child by a person in a position of trust, authority or supervision in the first degree when the person: (1) Intentionally engages in sexual intercourse with a child who has not yet reached that child's own sixteenth birthday and the person *stands in a position of trust, authority or supervision over the child*, or is an invitee or designee of a person who stands in a position of trust, authority or supervision over the child. (2) Intentionally engages in sexual penetration with a child who has not yet reached that child's own sixteenth birthday and the person *stands in a position of trust, authority or supervision over the child*, or is an invitee or designee of a person who stands in a position of trust, authority or supervision over the child." (emphasis added)); *id.* § 778A ("(a) A person is guilty of sexual abuse of a child by a person in a position of trust, authority, or supervision in the second degree when the person: (1) Intentionally has sexual contact with a child who has not yet reached that child's sixteenth birthday or causes the child to have sexual contact with the person or a third person and the person *stands in a position of trust, authority, or supervision over the child*, or is an invitee or designee of a person who stands in a position of trust, authority, or supervision over the child." (emphasis added)).

[45] *Hopkins v. State*, 293 A.3d 145, 150 (Del. 2023) (citing *Ways v. State*, 199 A.3d 101, 106 (Del. 2018)).

[46] *Hopkins*, 293 A.3d at 150 (citing *Ways*, 199 A.3d 106–07).

[47] *Del. Solid Waste Auth. v. Del. Dep't of Nat. Res. & Env't Control*, 250 A.3d 94, 105 (Del. 2021).

(2) A teacher, coach, counselor, advisor, mentor or any other person providing instruction or educational services to a child or children, whether such person is compensated or acting as a volunteer; or

. . .

(7) Any other person who because of that person's familial relationship, profession, employment, vocation, avocation or volunteer service has regular direct contact with a child or children and in the course thereof assumes responsibility, whether temporarily or permanently, for the care or supervision of a child or children.[48]

(14)   Pearson contends that the State did not offer sufficient evidence proving he was in a "position of trust, authority or supervision" over a child.  Our review of the record is to the contrary.  M.M. was a junior volunteer firefighter who "dream[ed]" of becoming a regular volunteer member.[49]  Pearson was the deputy chief of the neighboring fire company that routinely worked with Mill Creek.  Pearson knew from their conversations that M.M. wanted to be a firefighter.  He asked her about her volunteer work at Mill Creek and offered to train her by taking her into a basement fire.  M.M. in turn saw Pearson as an experienced firefighter that she "could learn a lot from."  Even after Pearson began making sexual comments to M.M., she "still looked at him like somebody [she] could learn from."

---

[48] 11 *Del. C.* § 761(e).

[49] A30 (Testimony of Lauren Liebal, M.M.'s mother).

9

(15) The statute's non-exhaustive list was intended to encompass relationships where someone in authority – like a deputy fire chief – stands in a position of trust involving a child. Pearson was not M.M.'s assigned "teacher, coach, counselor, advisor, [or] mentor," but he nonetheless provided "instruction or educational services" to M.M. through his position in the fire company and interactions with M.M. A reasonable jury could find that Pearson stood in a "position of trust, authority or supervision" over M.M. under subsection (e)(2) of the statute. Having found that Pearson met the definition under subsection (e)(2), we need not reach the alternative grounds to affirm under subsection (e)(7) of the statute.[50]

(16) For his constitutional argument, Pearson asserts that the definition of "position of trust, authority or supervision" in Section 761(e) is unconstitutionally vague as applied to him. As the argument goes, because there was insufficient evidence to convict him using the positions specified in the statute, the jury relied

---

[50] Pearson argues that the State waived its argument under subsection (e)(2) because the argument was not raised in response to Pearson's motion for acquittal. Pearson also asserts that he cannot be convicted under (e)(2) because the Superior Court did not address that ground in its ruling. Neither argument is persuasive. First, the State contended below that M.M. "had hopes of [Pearson] becoming her mentor *or* someone who could possibly further her career as a firefighter." A177 (State's Resp. to Mot. for J. Acquittal). This statement implicates (e)(2) as a ground for convicting Pearson. And second, our Court can affirm based on a different rationale than what was articulated by the Superior Court. *See Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995).

10

on what he claims is the statute's vague "includes, but is not limited to" language.[51]

But as found above, a jury could properly find that he stood in a position of trust under subsection (e)(2). Thus, we need not reach the constitutional argument.[52]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[51] *See* Opening Br. at 28; Appellant's Reply Br. at 8.

[52] *See* Oral Argument at 6:43, *Pearson v. State*, No. 268, 2024 (Del. Apr. 9, 2025), https://vimeo.com/1073969888 (Pearson's Counsel: "If [the State] had presented sufficient evidence, under (2) or (7), there's no vagueness problem.").